Otis Gilpin, Plaintiff-Appellant, v. Harry Lev and Mid-City Uniform Cap Company, a Corporation, Defendants-Appellees.

Gen. Nos. 49,242, 49,243.

First District, Third Division.

April 21, 1966.

James A. Dooley, of Chicago, for appellant.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (Robert G. Schloerb, Herbert C. Loth, Jr., and Richard J. Kissel, of counsel), for Mid-City Uniform Cap Company, appellee.

OPINION ON REHEARING.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

Otis Gilpin, the plaintiff, brought this suit to recover for personal injuries he sustained on April 1, 1952, when an auto in which he was a passenger overturned. The auto was owned by Mid-City Uniform Cap Company and was driven by the comptroller of the company, Eugene Manno. Plaintiff originally sued Manno, Harry Lev and Mid-City; however, only Lev and Mid-City were served with process and the matter was tried only as to those defendants by judge and jury.

At the close of all of the evidence the trial court directed a verdict in favor of defendant Mid-City, and the jury returned a verdict in favor of the plaintiff and against defendant Lev in the amount of $30,000. Lev filed a post-trial motion for a judgment notwithstanding the verdict which was granted by the trial court. The plaintiff appeals both from the directed verdict in favor of Mid-City and the judgment notwithstanding the verdict in favor of Lev.

The defendant Lev was the president of Mid-City, a corporation engaged in the manufacture of uniform caps. He and his wife each owned 50% of the stock of the corporation. Eugene Manno, the driver of the auto owned

68

by Mid-City and involved in the accident, was the comptroller of the corporation during the year 1952. Though Manno testified that at the time of the accident he was no longer employed by Mid-City, the payroll records of Mid-City and the testimony of Lev show otherwise.

On March 1, 1952, a partnership agreement was entered into between Manno and Lev embracing the sale and production of oil. The name under which the business was to be conducted was "The Paramount Oil Company."

The plaintiff, in the early part of 1952, was employed by an oil company, of which he was part owner. In February of that year he was approached by Manno at his home in Benton, Illinois. Manno said that plaintiff was recommended to him by a friend and that he wanted to invest some money in oil. After several meetings, and a trip to Kentucky to look at oil wells, Manno got an option to purchase an oil lease and put down $10,000 to bind the option.

Plaintiff and Manno then went to Chicago where they met Lev. At some prior time Manno gave plaintiff a business card which showed Manno was employed by Mid-City. In Chicago, the purchase of the oil lease was discussed, and Lev told the plaintiff that he was president of Mid-City and that they were going to buy the property. They then went to a bank where Lev withdrew $100,000, gave it to Manno, and Manno and plaintiff then drove back to Kentucky in the auto owned by Mid-City. Lev gave Manno permission to use the auto for the purposes of the oil business, and also for coming back to Chicago to check on Mid-City business, since Manno was comptroller of that company. Manno purchased the oil lease in Kentucky, and plaintiff and Manno then took up lodging in Celina, Tennessee, six miles from the lease.

After they arrived in Kentucky an employment contract was entered into between plaintiff, individually, and Manno and Lev d/b/a Paramount Oil Company, under

which plaintiff was to supervise and operate drilling operations, negotiate for the purchase of leases, and be responsible for the prudent management and operation of all leases belonging to the said Paramount Oil Company. The contract was to be effective as of the 1st day of March, 1952.

Manno testified that Paramount had from 3 to 5 employees on April 1, 1952, all of whom were working in Kentucky. Plaintiff, however, testified that Paramount had but one employee, a pump man named Truman Britt.

On April 1, 1952, plaintiff and Manno left on a trip from Celina, Tennessee, to Bowling Green, Kentucky, a distance of approximately 85 miles. Plaintiff testified that he had no personal reason to go to Bowling Green that night and that he had no business there in connection with his duties to the oil business. Plaintiff said that he did not know the purpose of the trip, and that Manno had asked him to go along. Manno, by a deposition read into evidence at the trial, stated that the trip had nothing to do with the business of Mid-City; the purpose of the trip was to see a lawyer named Milliken about some easement and egress contracts for Paramount Oil. Further, Manno said that he had never asked plaintiff to go along on the trip, because they always went places together.

Lev testified that he had no prior knowledge of the trip. He stated that early in 1952 he was interested in setting up a raincoat factory in Bowling Green, and that Manno, on behalf of Mid-City, had consulted an attorney named Milliken concerning the purchase of a plant.

On the trip to Bowling Green the auto overturned, allegedly through the negligence of Manno. As a result of this accident plaintiff sustained numerous injuries for which he seeks to recover damages in this action.

At the trial the defendant Lev made an offer of proof that the plaintiff had made an application for benefits under the Kentucky Workmen's Compensation Act, and

that pursuant to such application the plaintiff had been paid amounts of $720 and $999.05 by the insurance carrier of Manno and Lev. This application was sworn to and signed by the plaintiff and recited that the injuries of the plaintiff had resulted "by reason of an accident arising out of the course of his employment" by the defendants. This document was excluded from evidence.

However, plaintiff on cross-examination admitted that under oath he had sworn that the injuries he sustained arose out of the course of his employment by Paramount Oil. He testified that the sworn statements were true, that he had made them, and that the signature thereon was his own.

This opinion will be divided into two parts—the first dealing with the directed verdict in favor of Mid-City, and the second with the judgment notwithstanding the verdict in favor of Lev.

The trial court was correct in directing a verdict for Mid-City. Plaintiff cites the case of Rawlings v. Clay Motor Co., 287 Ky 604, 154 SW2d 711, to sustain his position that the question of whether or not the trip to Bowling Green was for the purposes of Mid-City was properly a question for the jury. In that case the court said that a presumption arises that an employee is on his employer's business if he is operating a motor vehicle belonging to his employer. The court added, however, that: "But, such presumption is overcome when it is met by uncontradicted and unimpeached evidence which disproves the presumption and which evidence is in harmony with the facts upon which the presumption is based. Home Laundry Co. v. Cook, 277 Ky 8, 125 SW2d 763."

Plaintiff argues that the ownership of the auto by Mid-City, and the fact that the driver, Manno, was an employee of Mid-City, created the presumption that Manno was acting as the agent of Mid-City at the time of the accident. However, this presumption is rebutted

71

by "uncontradicted and unimpeached evidence which disproves the presumption." (Rawlings v. Clay Motor Co., supra.) Plaintiff testified that he did not know the purpose of the trip, while Manno stated in his deposition that the trip was on the business of Paramount Oil. There is no testimony by the plaintiff to disprove that Manno was acting as the agent of Paramount at the time of the accident. Further, upon cross-examination, the plaintiff admitted orally that at the time of the accident he was traveling pursuant to his employment as supervisor of oil well operations for the Paramount Oil Corporation, and that the auto was operated by his employer, Eugene Manno, a partner of Paramount Oil.

 This statement by the plaintiff is an admission against interest insofar as his action against Mid-City is concerned. It is admissible against the plaintiff not merely for impeachment purposes; it constitutes competent evidence from which to prove or disprove a material fact. Casey v. Burns, 7 Ill App2d 316, 129 NE2d 440; Chambers v. Appel, 392 Ill 294, 64 NE2d 511. This admission, together with the testimony of plaintiff and Manno as to the purpose of the trip to Bowling Green, rebuts the presumption which arose that the trip was for the business of Mid-City.

Further, while plaintiff argued that the jury should have been allowed to pass upon the question of whether Manno was an agent of Mid-City at the time of the accident, he stated in another portion of his brief, in support of his contention that the judgment notwithstanding the verdict in favor of Lev should be reversed, that there can be no serious question but that Manno was acting as the agent of Lev at the time of the accident. With this last statement we are in agreement.

Therefore, we affirm the action of the lower court in directing a verdict for the defendant, Mid-City Uniform Cap Company.

The jury returned a verdict in favor of the plaintiff and against the defendant Lev in the amount of $30,000. The trial court granted the motion of Lev for judgment notwithstanding the verdict. This was error by the court.

The jury did not have an opportunity to decide whether the plaintiff was barred from recovery in a common-law action by virtue of the Kentucky Workmen's Compensation Act. On direct examination the plaintiff testified that he did not know the purpose of the trip and he had no business in Bowling Green in connection with Paramount's business. However, on cross-examination plaintiff stated that he was an employee of Paramount, and that his injuries arose out of the course of his employment by Paramount. The trial court correctly held that plaintiff's unexplained testimony that his injuries were sustained in the course of his employment by Paramount, constituted an admission against interest. However, the court erred when it held that plaintiff was therefore confined to his remedies under the Workmen's Compensation Act, since a question of fact arose as to whether the act applied to the plaintiff's employer, Paramount. The case that went to the jury did not cover this question, when actually it was a proper question for jury determination.

██ Under the Kentucky Revised Statutes, section 342.015 provides that where both employer and employee have elected to furnish and accept compensation under the Workmen's Compensation Act, the employer shall be relieved of all other liability. This statute makes the act the exclusive remedy for injuries sustained by employees during the course of their employment. As previously stated, however, in the instant case a question of fact arose as to whether the act applied to plaintiff's employer. The Kentucky Revised Statutes, section 342.005 (1) defines an employer under the act as "all employers having three or more employees. . . ." There was a disputed

73

question of fact as to whether Paramount met this requirement of three employees. Manno testified that the oil company had from three to five employees on April 1, 1952, all working in Kentucky. He stated that a check of the payroll records of Paramount would substantiate this. Plaintiff, however, testified that there was only one employee at this time, a pumper named Truman Britt. The payroll records were not introduced into evidence and no determination was made as to the number of persons employed by Paramount. Further, plaintiff contends that Paramount did not file the written notice of election to operate under the act, as required by the Kentucky statutes. These factual determinations as to the number of employees and whether Paramount filed according to Kentucky law are properly questions for the jury. It was error by the court to not submit these questions to the jury.

Where an injured employee is not by law entitled to workmen's compensation under the act, the act cannot be used to deprive him of preexisting or other common-law or statutory rights. In this case the compensation act should not as a matter of law be interpreted to take away the common-law rights of the plaintiff. (Horowitz, on Workmen's Compensation, 1944, pp 321, 322; Black Star Coal Co. v. Garland, 235 Ky 204, 30 SW2d 900.)

Further, the mere fact that plaintiff signed a claim and was paid some money does not work an estoppel on the plaintiff. In Conder v. Hayden, 335 SW2d 909, the court of appeals of Kentucky held that the acceptance of benefits under the workmen's compensation proceedings does not estop the plaintiff from denying in a common-law action that his injuries were compensable under the act.

If the compensation act does not apply, plaintiff is entitled to maintain a common-law action against Lev.

Lev and Manno were partners in Paramount Oil Company, and under both the common-law and Uniform Partnership Act, adopted both by Kentucky and Illinois, each partner is an agent of the other and of the partnership. Kentucky Revised Statutes, sections 362.150 through 362.360; Ill Rev Stats, 1963, c 106½, par 9(1).

"The liability of members of a partnership for a tort committed in the course of its business is joint and several. On the principle of mutual agency, the partnership, or every member of a partnership, is liable for torts committed by one of the members acting in the scope of firm business, although they do not participate in, notify or have knowledge of such torts. . . .

"The principles governing the liability of one partner for the torts of his copartners apply to torts based on the negligence of such partner." 40 Am Jur, Partnership, sec 191.

■ Since Manno admitted that the trip was for the business purposes of Paramount Oil, Lev is liable for the negligence of his partner acting within the scope of the partnership business.

■ The plaintiff has not asked for a new trial as to the defendant Lev; Lev has failed to appear or file a brief on appeal. Since we have concluded that the trial court was in error in allowing Lev's motion for judgment notwithstanding the verdict, because there was a question of fact as to whether the plaintiff's claim was barred by the Kentucky Workmen's Compensation Act and this question was not properly presented to the jury, we cannot direct the entry of judgment on the verdict of the jury in favor of the plaintiff and against Lev.

Thus, the judgment notwithstanding the verdict is reversed.

The decision of the trial court directing a verdict for the defendant Mid-City Uniform Cap Company is af-

firmed. The judgment for defendant Lev notwithstanding the verdict is reversed and the cause against Lev is remanded for new trial.

Affirmed in part and reversed and remanded in part.

SCHWARTZ and DEMPSEY, JJ., concur.