Docket Nos. 105912, 105917 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

DANIEL IOERGER *et al.*, Appellees, v. HALVERSON
CONSTRUCTION COMPANY, INC. (Midwest Foundation
Corporation, Appellant).

*Opinion filed December 18, 2008.*

JUSTICE KARMEIER delivered the judgment of the court, with
opinion.
Chief Justice Fitzgerald and Justices Freeman, Thomas, Garman,
and Burke concurred in the judgment and opinion.
Justice Kilbride dissented, with opinion.

## OPINION

The issue in this case is whether the immunity afforded to an
employer by the exclusive remedy provisions of the Workers'
Compensation Act (the Act) (820 ILCS 305/5(a), 11 (West 2000))
extends to the employer's co-venturer in a joint venture and to the
joint venture itself. The circuit court held that it does. The appellate
court reversed and remanded. 377 Ill. App. 3d 223. For the reasons
that follow, we reverse the appellate court's judgment, affirm the
judgment of the circuit court, and remand to the circuit court for
further proceedings.

The relevant facts are these. During the summer of 1999, Midwest Foundation Corporation (Midwest) entered into a joint venture (hereinafter, the Joint Venture) with Halverson Construction Company, Inc. (Halverson), in connection with a project undertaken by the Illinois Department of Transportation (IDOT) to repair the McCluggage Bridge over the Illinois River in Peoria. The terms of this business arrangement were set forth in a written agreement between Midwest and Halverson. The agreement provided that Midwest and Halverson "constitute[d] themselves as joint venturers for the purpose of submitting joint bids *** for the performance of the construction contracts herein before described, and for the further purpose of performing and completing such construction project." If the bids were awarded, they were to be "entered into in the names of the parties as joint venturers."

Under the agreement, profits and losses and liabilities resulting from the project were to be shared 60/40, with the larger share going to Midwest. The agreement required Midwest and Halverson to each make periodic contributions of working capital to the Joint Venture in proportion to their respective share of the profits and losses. It also specified how various responsibilities and costs were to be allocated.

Pursuant to the agreement, Midwest was responsible for "the performance of all labor for the Joint Venture, including payroll, payroll taxes, fringes and other employee expenses, including, but not limited to, the establishment of worker[s'] compensation insurance and the payments of all premiums therefore." Correspondingly, Midwest was "entitled to reimbursement from the Joint Venture for the costs incurred in performing the foregoing obligations; such reimbursement to be paid at such time or times as the Joint Venture shall determine."

IDOT accepted the Joint Venture's bid and the Joint Venture began work on the bridge project. In accordance with the joint venture agreement, Midwest furnished workmen for the project. Throughout the course of the project, Midwest would pay the labor costs, including workers' compensation insurance premiums, then submit statements to the Joint Venture for reimbursement.

Among the workers employed by Midwest on the bridge project were ironworkers Daniel Ioerger, Randy McCombs, Robert L. Foulks, Sr., and Ralph Bill. On April 24, 2000, while the four were working

-2-

from a platform suspended above the river, the platform collapsed, causing them to plummet into the river below. Ioerger, McCombs and Bill were injured. Foulks was killed.

Ioerger, McCombs, Bill and Robert Lamar Foulks, as administrator of the estate of Robert L. Foulks, Sr. (hereinafter referred to collectively as plaintiffs), each applied for and received workers' compensation benefits through Midwest's workers' compensation insurer. It is undisputed that these workers' compensation benefits were plaintiffs' exclusive remedy with respect to Midwest and that sections 5(a) and 11 of the Workers' Compensation Act (820 ILCS 305/5(a), 11 (West 2000)) precluded plaintiffs from bringing a common law action for negligence against Midwest in circuit court. See *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462-63 (1990).

In addition to seeking workers' compensation benefits from Midwest, plaintiffs brought a civil action in the circuit court of Peoria County against Halverson, the Joint Venture, and various other defendants to recover damages for injuries they sustained as a result of the accident. Their complaint, as amended, contained more than 40 counts. Counts I through V were directed against Halverson. Counts I, II, and V, brought on behalf of Ioerger, McCombs and Bill, respectively, alleged negligence. In counts III and IV, Robert Lamar Foulks, as administrator of the estate of Robert L. Foulks, Sr., asserted claims under the Wrongful Death Act (see 740 ILCS 180/0.01 *et seq.* (West 2000)) and the Survival Act (755 ILCS 5/27-6 (West 2000)). Counts XI through XV paralleled courts I through V, but were directed against the Joint Venture rather than Halverson. All the remaining counts involved other defendants and are not relevant to this appeal.

Halverson and the Joint Venture filed separate motions for summary judgment pursuant to section 2–1005 of the Code of Civil Procedure (735 ILCS 5/2–1005 (West 2000)), arguing that as co-venturers with Midwest, they are cloaked with the same immunity enjoyed by Midwest under the Workers' Compensation Act. The trial court agreed and entered summary judgment in their favor. In so doing, it made an express written finding pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal.

Plaintiffs appealed. The appellate court reversed and remanded, with one justice dissenting. 377 Ill. App. 3d 223. Halverson and the Joint Venture each petitioned for leave to appeal. 210 Ill. 2d R. 315. We granted both parties' petitions and consolidated them for briefing, argument and decision.[1]

Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2000). Whether summary judgment was properly granted in a particular case is a matter we review *de novo*. *Williams v. Manchester*, 228 Ill. 2d 404, 416-17 (2008).

Under the express terms of the Workers' Compensation Act, the law's exclusive remedy provisions extend not only to the employer, but to various other specified entities, including agents of the employer. 820 ILCS 305/5(a) (West 2000). The question of whether an agency relationship exists is normally a question of fact. A court may decide the issue as a matter of law, however, if only one conclusion may be drawn from the undisputed facts. See *Churkey v. Rustia*, 329 Ill. App. 3d 239, 243 (2002). This is such a case.

As described earlier in this opinion, Halverson was a co-venturer with Midwest. Under Illinois law, joint ventures are governed by partnership principles, "for a joint venture is essentially a partnership carried on for a single enterprise." *In re Johnson*, 133 Ill. 2d 516, 526 (1989); see *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 438 (1979) ("[w]hen a joint venture is found to exist, the legal principles pertaining to the relationship between partners govern"). Partners, in turn, are agents of the partnership and of one another for purposes of the business. That is so both as a matter of common law and under the

---

[1]After plaintiffs filed their briefs, Halverson and the Joint Venture each filed motions to strike them on the grounds that they failed to adequately cite to the record as required by Supreme Court Rules 341(h)(6) and 341(h)(7) (201 Ill. 2d Rs. 341(h)(6), (h)(7)). Although we agree that the briefs contain deficiencies, those deficiencies did not significantly impede the ability of Halverson and the Joint Venture to respond to plaintiffs' arguments, nor did they hamper our review to the merits of this case. The motions to strike are therefore denied.

Uniform Partnership Act, which Illinois has adopted (see 805 ILCS 205/1 *et seq.* (West 2000)). See *Gilpin v. Lev*, 70 Ill. App. 2d 66, 75 (1966). As a co-venturer with Midwest, Halverson was therefore Midwest's agent. Because Halverson was Midwest's agent, it was, in turn, entitled to invoke the same immunity afforded to Midwest by the exclusive remedy provisions of the Workers' Compensation Act (820 ILCS 305/5(a), 11 (West 2000)). *Smith v. Metropolitan Sanitary District of Greater Chicago*, 77 Ill. 2d 313, 318 (1979); see *Moran v. Gust K. Newberg/Dugan & Meyers*, 268 Ill. App. 3d 999, 1005-06 (1994). Accordingly, the circuit court was correct to grant Halverson's motion for summary judgment based on the Act.

Our conclusion is the same with respect to the Joint Venture itself. That is so for two reasons. The first is inherent in the nature of the joint venture form of business organization. While a partnership is treated as a separate entity for purposes of owning property, it is not a separate legal entity. Because joint ventures are governed by partnership principles, the same is true of them. See *Palumbo Bros., Inc. v. Wagner*, 293 Ill. App. 3d 756, 766 (1997). The Joint Venture in this case was thus inseparable from its constituent entities, Midwest and Halverson. Both of those entities being immunized by the exclusive remedy provisions of the Workers' Compensation Act, it necessarily follows that the Joint Venture was likewise shielded by the exclusive remedy provisions of the Act.

Allowing the Joint Venture to invoke the exclusive remedy provisions of the Act is also mandated by the principles underlying the Act's remedial scheme. We observed in *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 298 (2007), quoting *Forsythe v. Clark USA, Inc.*, 361 Ill. App. 3d 642, 651 (2005), that allowing a party who has paid nothing toward an injured employee's workers' compensation benefits to nevertheless invoke the Act's immunity to escape tort liability for the employee's injuries would be tantamount to allowing the party "to have its cake and eat it too." By the same token, subjecting a party to tort liability for an employee's injuries notwithstanding the fact that the party has borne the costs of the injured employee's workers' compensation insurance would be the same as declaring that a party who has paid for the cake may neither keep it nor eat it.

As these metaphors illustrate, the immunity afforded by the Act's exclusive remedy provisions is predicated on the simple proposition that one who bears the burden of furnishing workers' compensation benefits for an injured employee should not also have to answer to that employee for civil damages in court. See *Schmidt v. Milburn Brothers, Inc.*, 296 Ill. App. 3d 260, 269 (1998). While the joint venture agreement between Midwest and Halverson in this case specified that Midwest was responsible for "the performance of all labor for the joint venture, including payroll, payroll taxes, fringes and other employee expenses, including, but not limited to, the establishment of worker[s'] compensation insurance and the payments of all premiums therefore," the agreement further provided that Midwest was "entitled to reimbursement from the Joint Venture for the costs incurred in performing the foregoing obligations; such reimbursement to be paid at such time or times as the Joint Venture shall determine." Ultimate responsibility for payment of the workers' compensation insurance premiums therefore lay with the Joint Venture. Because the Joint Venture bore the expense of the workers' compensation premiums and was thus responsible for making workers' compensation benefits available to plaintiffs, it was entitled to avail itself of the Act's exclusive remedy provisions.

In reaching a contrary conclusion, the appellate court in this case based its decision on the belief that the Joint Venture had not, in fact, contributed to the payment of workers' compensation premiums or reimbursed Midwest for its payment of them before the accident. According to the appellate court, defendants actually admitted "at the time of oral arguments, months/years later *** that [Halverson and the Joint Venture] had not reimbursed Midwest for any expenses associated with the joint venture." 377 Ill. App. 3d at 230. Moreover, the appellate court held, Halverson and the Joint Venture could not cure the lack of reimbursement after the fact. In the court's view,

> "it would be bad public policy to allow Halverson and/or the joint venture, at this point, to now deliver or postdate a check to Midwest for reimbursement of wages and workers' compensation premiums to fulfull its obligations under the joint venture agreement in order to obtain the protection of the Act's immunity."

-6-

With due respect to the appellate court, we believe that its characterization of the facts underlying this case is incorrect. Uncontradicted deposition testimony submitted by the Joint Venture in support of its motion for summary judgment established that Midwest and Halverson periodically sought and received reimbursement for their labor costs from the Joint Venture as specified in the joint venture agreement. The transcript of the oral argument before the appellate court contains nothing that could be construed as admission by defendants that the deposition testimony was somehow erroneous or that the claimed reimbursements had never been made. In addition, after the appellate court filed its opinion containing its error, defendants adduced additional documentation in support of their petition for rehearing which showed specifically that the Joint Venture had reimbursed Midwest for workers' compensation premiums and other labor costs for plaintiffs for the month in which the accident occurred.

The appellate court's reasoning is flawed for another reason as well. Even if the Joint Venture had not yet made reimbursement to Midwest for the workers' compensation premiums and other labor costs, the fact remains that it was contractually obligated to do so. Joint ventures arise solely through voluntary agreement (see *Herst v. Chark*, 219 Ill. App. 3d 690, 694 (1991)) and are controlled by the terms of the agreements through which they are created (*Harmon v. Martin*, 395 Ill. 595, 612-13 (1947)). Where, as here, the agreement requires the Joint Venture to reimburse the individual co-venturers for workers' compensation premiums and other labor costs, it is that contractual obligation, not the timing of particular reimbursements, which is dispositive.

For the foregoing reasons, the circuit court was correct when it granted summary judgment in favor of Halverson and the Joint Venture based on the exclusive remedy provisions of the Workers' Compensation Act (820 ILCS 305/5(a), 11 (West 2000)). The appellate court erred when it set the circuit court's judgment aside. The judgment of the appellate court is therefore reversed, the judgment of the circuit court is affirmed, and the cause is remanded to the circuit court for further proceedings.

*Appellate court judgment reversed;*

JUSTICE KILBRIDE, dissenting:

In my view, a question of material fact exists as to whether Halverson and the Joint Venture paid for the workers' compensation benefits in this case and were, therefore, entitled to immunity from tort liability under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)). I believe the appellate court properly reversed the trial court's grant of summary judgment. Accordingly, I respectfully dissent.

Summary judgment is appropriate only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2000). In reviewing a grant of summary judgment, this court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the nonmoving party. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment is a drastic means of disposing of litigation that should not be granted unless the movant's right to judgment is clear and free from doubt. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007); *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004).

In the summary judgment motions, defendants Halverson and the Joint Venture asserted immunity from tort liability under the Act. In *Forsythe*, this court examined the exclusive remedy provision in the Act (820 ILCS 305/5(a) (West 2000)). *Forsythe*, 224 Ill. 2d at 296. This court recognized that a party must contribute to providing workers' compensation benefits to receive the benefit of the Act's immunity. *Forsythe*, 224 Ill. 2d at 298. As noted by the majority, the Act's immunity from tort liability is based on "the simple proposition that one who bears the burden of furnishing workers' compensation benefits for an injured employee should not also have to answer to that employee for civil damages in court." Slip op. at 5-6, citing *Schmidt v. Milburn Brothers, Inc.*, 296 Ill. App. 3d 260, 269 (1998). Thus, the Act's protection from tort liability is limited to the party

-8-

that pays workers' compensation premiums or otherwise provides those benefits.

I believe this case presents a genuine question of material fact on whether the defendants actually contributed to the workers' compensation premiums. As noted by the appellate court, the defendants did not produce conclusive evidence that they paid or contributed to the workers' compensation premiums before the accident. The appellate court further noted that "at the time of oral arguments, months/years later, it was admitted that [Halverson and the Joint Venture] had not reimbursed Midwest for any expenses associated with the joint venture." 377 Ill. App. 3d at 230. I believe the appellate court's statement is supported by the transcript of the oral argument. The transcript shows Halverson's attorney asserted that under the joint venture agreement:

> "Midwest Foundation is obliged to acquire the workers' compensation coverage, is required to pay that premium, and is reimbursed that premium out of the joint venture proceeds. *** Now, once, then, the Midwest Foundation is reimbursed that premium out of the joint venture proceeds, then the potential distributable profit of the joint venture is reduced, and they share in it in that manner."

We must construe this statement strictly against the defendants as the moving parties, and liberally in favor of the plaintiffs. *Williams*, 228 Ill. 2d at 417. Consistent with the appellate court's opinion, this statement can be fairly construed to mean that Midwest paid the workers' compensation premiums and only anticipated reimbursement of those amounts at the conclusion of the project. The statement does not indicate that the defendants ever paid or contributed to the payment of the workers' compensation premiums.

The majority has identified evidence that may tend to show the defendants contributed to providing workers' compensation benefits. The majority, however, relies in part on evidence submitted with the defendants' petition for rehearing in the appellate court. That evidence was not part of the record before the trial court when it ruled on the motions for summary judgment. Thus, that evidence should not be considered in reviewing the trial court's decision.

In sum, the defendants, as the moving parties, must show their right to relief is clear and free from doubt. *Forsythe*, 224 Ill. 2d at 280. Given this record, I believe a genuine issue of material fact exists on whether the defendants actually bore the burden of providing workers' compensation benefits. The defendants, therefore, have not shown clearly that they are entitled to the protection of the Act's exclusive remedy provision. Accordingly, I would affirm the appellate court's judgment reversing the grant of summary judgment and remanding the cause to the trial court for further proceedings.