2021 IL App (1st) 200254

No. 1-20-0254

Filed February 10, 2021

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| DONOVAN MUNOZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| BULLEY & ANDREWS, LLC; BEHRINGER | ) | No. 19 L 3878 |
| HARVARD SOUTH RIVERSIDE, LLC; and RAR2-222 | ) | |
| SOUTH RIVERSIDE, LLC, | ) | |
| | ) | |
| Defendants, | ) | Honorable |
| | ) | Daniel T. Gillespie, |
| (Bulley & Andrews, LLC, Defendant-Appellee). | ) | Judge presiding |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant Bulley & Andrews, LLC (Bulley LLC) entered into a contract with building

owner RAR2-222 South Riverside, LLC (South Riverside) to be the construction manager on a

construction project at the building. As per the contract, Bulley LLC obtained a workers'

compensation insurance policy for its employees as well as the employees of Bulley & Andrews

Concrete Restoration, LLC (Bulley Concrete), its wholly owned subsidiary, which contained a

$250,000 deductible. Plaintiff Donovan Munoz, an employee of Bulley Concrete, injured his back while working on the project. Because of his injury, Bulley LLC provided plaintiff with workers' compensation benefits, including paying over $76,000 worth of his medical bills. Later, plaintiff sued Bulley LLC for his injuries. On Bulley LLC's motion, the circuit court dismissed plaintiff's lawsuit, finding that Bulley LLC was immune from the lawsuit under the exclusive remedy provisions of the Workers' Compensation Act (Act) (820 ILCS 305/5(a), 11 (West 2018)).

¶ 2       Plaintiff now appeals the circuit court's dismissal order and contends that, because Bulley LLC was not his employer, it was not immune from a lawsuit under the exclusive remedy provisions of the Act. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4       South Riverside owned a building located at 222 South Riverside in Chicago. In March 2015, South Riverside executed an agreement with Bulley LLC to be the construction manager on a project at the building. Under the agreement, Bulley LLC was required to

> "purchase from and maintain in a company or companies lawfully authorized to do
> business in the jurisdiction in which the Project is located such insurance as will
> protect the Contractor from claims set forth below which may arise out of or result
> from the Contractor's operations and completed operations under the Contract and
> for which the Contractor may be legally liable, whether such operations be by the
> Contractor or by a Subcontractor or by anyone directly or indirectly employed by
> any of them, or by anyone for whose acts any of them may be liable."

This included "[c]laims under workers' compensation, disability benefit and other similar employee benefit acts that are applicable to the Work performed."

¶ 5    Prior to beginning the work, Bulley LLC procured workers' compensation insurance for the project from Arch Insurance Group. The workers' compensation policy named both Bulley LLC and Bulley Concrete, among others, as insureds and had a $250,000 deductible. Although Bulley Concrete was a wholly owned subsidiary of Bulley LLC, the companies had different presidents, employed different people, and had different specialties. As part of the scope of work for the project, Bulley LLC agreed to perform much of the concrete work itself, but no language to this effect was included in the contract between it and South Riverside. For that concrete work, Bulley LLC used employees of Bulley Concrete, including plaintiff. Though Bulley LLC executed contracts with various subcontractors for work on the construction project, it did not execute one with Bulley Concrete.

¶ 6    In early December 2016, workers had placed blankets on top of freshly poured concrete to prevent it from freezing. Recent precipitation, however, had caused the blankets to become waterlogged and heavier than usual. On December 4, 2016, plaintiff was working at the building, went to pull off one of these blankets, and injured his back. Later that month, plaintiff filed a workers' compensation claim, and pursuant to its workers' compensation policy, Bulley LLC began paying out of pocket for plaintiff's medical bills, which it continued to do into 2019.

¶ 7    In April 2019, plaintiff sued Bulley LLC, South Riverside, and Behringer Harvard South Riverside, LLC, another company that allegedly owned, operated, and maintained the building. Plaintiff asserted that, at the time of his injury, he was an employee of Bulley Concrete, which he claimed was a subcontractor of Bulley LLC on the project. Plaintiff alleged that the blankets placed on top of the concrete were worn out and riddled with holes, which allowed the water penetration. This, according to plaintiff, caused the blankets to become unreasonably dangerous to be moved

manually. Because of the alleged unreasonable danger, plaintiff raised two counts of negligence and sought damages in excess of $50,000.

¶ 8    Thereafter, Bulley LLC filed a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2018)), arguing that both counts were barred by the exclusive remedy provisions of the Act (820 ILCS 305/5(a), 11 (West 2018)) because it had a preexisting legal obligation to pay for plaintiff's workers' compensation benefits and it did so by paying more than $76,000 of his medical bills. Bulley LLC included with its motion an affidavit from Greg Marquez, its safety director, who averred to the supporting facts in its motion, as well as a list of medical payments from it to plaintiff's medical providers totaling over $76,000 from December 2016 until June 2019.

¶ 9    In response, plaintiff asserted that he made a workers' compensation claim against Bulley Concrete, his employer, and accordingly did not name it as a defendant in the lawsuit. Plaintiff noted that, although Bulley Concrete was a wholly owned subsidiary of Bulley LLC, they were nevertheless distinct entities. Plaintiff argued that a parent company was not shielded from a lawsuit by an injured employee of its subsidiary, and thus, the Act did not bar his lawsuit against Bulley LLC. For support, plaintiff attached a deposition of Marquez, which contained, as an exhibit, the Arch insurance policy. In Bulley LLC's reply, it attached the contract between it and South Riverside.

¶ 10    Following the parties' briefings, the circuit court entered a written order on Bulley LLC's motion to dismiss. The court observed that the contract between Bulley LLC and South Riverside obligated Bulley LLC to pay for the workers' compensation insurance and benefits for Bulley Concrete's employees. Because Bulley LLC was legally obligated to pay for the workers' compensation benefits that plaintiff received, and there was no evidence that Bulley Concrete was

self-insured or that Bulley LLC had the option to reimburse Bulley Concrete for any payments that Bulley Concrete may have made, the court granted Bulley LLC's motion to dismiss with prejudice. The court added that there was no just reason to delay appeal (see Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)), and plaintiff timely appealed.

¶ 11                                    II. ANALYSIS

¶ 12    Plaintiff contends that—because Bulley Concrete was his employer, not Bulley LLC—the exclusive remedy provisions of the Act did not bar him from suing Bulley LLC. He therefore argues that the circuit court improperly granted Bulley LLC's motion to dismiss.

¶ 13    A motion to dismiss under section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)) admits the legal sufficiency of the complaint but asserts that certain defects, defenses, or other affirmative matters appearing outside the pleadings act to defeat the claims. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. In analyzing a section 2-619 motion, the circuit court is required to accept all well-pled facts in the complaint as true, as well as any reasonable inferences from those facts. *Id.* All pleadings and supporting documents must be construed in the light most favorable to the nonmoving party. *Id.* The critical inquiry is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). We review a motion to dismiss *de novo*. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 115 (2008).

¶ 14    Our legislature enacted the Act to establish "a new framework for recovery to replace the common-law rights and liabilities that previously governed employee injuries." *Folta v. Ferro Engineering*, 2015 IL 118070, ¶ 11. The legislation created a no-fault system of liability upon the employer, in exchange for the employee being statutorily limited in his recovery for injuries arising

out of his employment. *Id.* ¶ 12. To this end, the Act contains "an exclusive remedy provision as part of the *quid pro quo* which balances the sacrifices and gains of employees and employers." *Id.* The exclusive remedy provisions is provided for in two sections of the Act. First, in relevant part, section 5(a) of the Act states:

> "No common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***." 820 ILCS 305/5(a) (West 2018).

Additionally, section 11 of the Act states:

> "The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act, or of any employer who is not engaged in any such enterprises or businesses, but who has elected to provide and pay compensation for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act ***." *Id.* § 11.

Because of these provisions, the Act generally provides the exclusive remedy for an employee to recover against his employer for injuries arising out of the course of his employment. *Folta*, 2015 IL 118070, ¶ 14.

¶ 15    Plaintiff does not dispute that, on December 4, 2016, he was considered an employee under the Act and that he sustained his injury while engaged in the line of duty as such an employee. In other words, he does not dispute that he was under the purview of the Act. Rather, he argues that,

- 6 -

because Bulley LLC was not his direct employer, it does not enjoy the immunity afforded by the exclusive remedy provisions.

¶ 16    According to the Act, an employer is defined as:

"Every person, firm, public or private corporation[ ] *** who has any person in service or under any contract for hire, express or implied, oral or written, and who is engaged in any of the enterprises or businesses enumerated in Section 3 of this Act, or who at or prior to the time of the accident to the employee for which compensation under this Act may be claimed, has in the manner provided in this Act elected to become subject to the provisions of this Act, and who has not, prior to such accident, effected a withdrawal of such election in the manner provided in this Act.

*** Any one engaging in any business or enterprise referred to in subsections 1 and 2 of Section 3 of this Act who undertakes to do any work enumerated therein, is liable to pay compensation to his own immediate employees in accordance with the provisions of this Act, and in addition thereto if he directly or indirectly engages any contractor whether principal or sub-contractor to do any such work, he is liable to pay compensation to the employees of any such contractor or sub-contractor unless such contractor or sub-contractor has insured, in any company or association authorized under the laws of this State to insure the liability to pay compensation under this Act, or guaranteed his liability to pay such compensation." 820 ILCS 305/1(a)(2), (3) (West 2018).

- 7 -

Subsections 1 and 2 of section 3 include such enterprises or businesses as "maintaining, removing, remodeling, altering or demolishing of any structure" and "[c]onstruction." *Id.* § 3(1), (2).

¶ 17 In arguing that Bulley LLC was not his employer, plaintiff highlights *Laffoon v. Bell & Zoller Coal Co.*, 65 Ill. 2d 437 (1976). In *Laffoon*, three employees of different subcontractors were injured, but the subcontractors did not provide them with workers' compensation insurance, which resulted in the general contractors being responsible for their workers' compensation claims. *Id.* at 441-43. Later, the workers sued the general contractors, but all three lawsuits were dismissed in favor of the general contractors. *Id.* The cases were consolidated before our supreme court, and the question presented was whether the exclusive remedy provisions of the Act provided the general contractors with immunity from litigation, given that they had become responsible for the workers' compensation claims. *Id.* at 443. The court held that it had to interpret the exclusive remedy provisions "as conferring immunity upon employers only from common law or statutory actions for damages by their immediate employees" and "[t]o hold otherwise in light of the present factual situations would be violative of the injured employee's right to due process and equal protection of the laws." *Id.* at 447. In other words, our supreme court found that a general contractor did not become an injured worker's employer for purposes of the Act merely because it paid workers' compensation benefits. *Statewide Insurance Co. v. Brendan Construction Co.*, 218 Ill. App. 3d 1055, 1060 (1991).

¶ 18 Approximately 30 years after *Laffoon*, in *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196 (2008), our supreme court heard a case involving a joint venture. Midwest Foundation Corporation (Midwest) and Halverson Construction Company (Halverson) agreed to form a joint venture for a construction project. *Id.* at 198-99. The agreement stipulated that Midwest would be

initially responsible for obtaining workers' compensation insurance but it would be reimbursed by the joint venture itself at a later date. *Id.* at 199. Multiple workers were injured while working on the construction project, and while they obtained workers' compensation benefits through Midwest's insurer, they also sued Halverson and the joint venture itself for damages. *Id.* at 200. The case reached our supreme court, where the question presented was whether the exclusive remedy provisions of the Act barred lawsuits against Halverson and the joint venture itself. *Id.* at 198.

¶ 19    Initially, our supreme court found that the provisions barred litigation against Halverson under agency principles. *Id.* at 202. The court then turned to the joint venture and found the same for two different reasons—first, because the joint venture was legally inseparable from its constituent entities. *Id.* at 202-03. But the court also found that the provisions barred litigation against the joint venture because of the principles underlying the remedial scheme of the Act. *Id.* at 203. The court observed that "subjecting a party to tort liability for an employee's injuries notwithstanding the fact that the party has borne the costs of the injured employee's workers' compensation insurance would be the same as declaring that a party who has paid for the cake may neither keep it nor eat it." *Id.* As such, "the immunity afforded by the Act's exclusive remedy provisions is predicated on the simple proposition that one who bears the burden of furnishing workers' compensation benefits for an injured employee should not also have to answer to that employee for civil damages in court." *Id.* Because the joint venture was the entity ultimately responsible for paying the workers' compensation premiums and making benefits available to any injured workers, "it was entitled to avail itself of the Act's exclusive remedy provisions." *Id.* at 204.

¶ 20    Following *Ioerger*, this court issued a decision in *Burge v. Exelon Generation Co.*, 2015 IL App (2d) 141090, ¶ 2, where the plaintiff worked for Exelon Nuclear Security, LLC (ENS), which was a wholly owned subsidiary of the defendant, Exelon Generation Company (Exelon). The plaintiff was injured while providing security services for ENS on Exelon's premises. *Id.* Following the injury, the plaintiff filed a claim for workers' compensation benefits against ENS, which was settled and paid for by Exelon. Then, he sued Exelon. *Id.* ¶¶ 2, 10. Exelon filed a motion to dismiss, arguing that it had engaged ENS as a contractor and it was the one who paid for the plaintiff's workers' compensation benefits. Thus, Exelon argued, it was immune from litigation under the exclusive remedy provisions of the Act. *Id.* ¶ 4. In support, Exelon provided an affidavit from its workers' compensation manager, who averred that Exelon used a third-party administrator/payor for workers' compensation benefits, and it had paid for all workers' compensation benefits for the plaintiff and other employees of ENS. *Id.* ¶ 5. In a supplemental affidavit, the workers' compensation manager stated that ENS was self-insured and that Exelon paid workers' compensation benefits, including to the plaintiff, on a reimbursement basis, in accordance with ENS's limited liability company agreement. *Id.* ¶ 6. The circuit court agreed with Exelon and granted its motion to dismiss. *Id.* ¶ 1.

¶ 21    On appeal, this court initially rejected Exelon's argument that it was immune under the Act's exclusive remedy provisions as an agent of ENS and then moved on to discuss the potential immunity based upon Exelon paying for the plaintiff's workers' compensation settlement. *Id.* ¶¶ 9-10. This court analyzed *Ioerger* and determined that the reasoning of *Ioerger* "depends on the existence of some preexisting legal obligation to pay, or reimburse another payor, for compensation due under the Act or for premiums for workers' compensation insurance." *Id.* ¶ 14. In other words, "immunity under [exclusive remedy provisions] cannot be predicated on [a]

defendant's payment of workers' compensation unless [the] defendant was under some legal obligation to pay (such as the contractual obligation imposed by the joint-venture agreement in *Ioerger*)." *Id.* ¶ 15. With its discussion of *Ioerger* complete, the court turned to the facts of its case and found that Exelon's affidavits were insufficient proof that it had a legal obligation to pay for the workers' compensation benefits. *Id.* This was because the affidavits were conclusory about Exelon's actual payment of benefits to the plaintiff and the limited liability company agreement that Exelon relied on for proof said "nothing about the obligation to provide workers' compensation insurance for ENS's employees." *Id.* ¶ 17. Consequently, this court found that Exelon failed to establish a basis for immunity under the exclusive remedy provisions, and the circuit court erred in granting the motion to dismiss. *Id.* ¶ 18.

¶ 22     With these decisions in mind, we turn to the instant case, which we find factually similar to *Burge*, except that Bulley LLC has sufficiently proven it had a preexisting legal obligation to pay for workers' compensation benefits of Bulley Concrete's employees, including plaintiff. As discussed, South Riverside executed an agreement with Bulley LLC to be the construction manager on a project at the building. As part of that agreement, Bulley LLC was required to obtain various insurance policies—including workers' compensation insurance—to cover it, a subcontractor, or "anyone directly or indirectly employed by any of them." To this end, Bulley LLC obtained workers' compensation insurance that designated it and Bulley Concrete, among others, as named insureds. After plaintiff injured his back while working on the project, he filed a claim for workers' compensation, which resulted in Bulley LLC paying over $76,000 worth of his medical bills, as they were obligated to do under the contract with South Riverside and the Arch insurance policy. These facts were proven though the contract between it and South Riverside, the Arch insurance policy, as well as the list of medical payments from it to plaintiff's medical

providers. "[T]he immunity afforded by the Act's exclusive remedy provisions is predicated on the simple proposition that one who bears the burden of furnishing workers' compensation benefits for an injured employee should not also have to answer to that employee for civil damages in court." *Ioerger*, 232 Ill. 2d at 203. Despite the fact that Bulley LLC was not the direct employer of plaintiff, as it bore the burden of furnishing workers' compensation benefits for plaintiff, it was entitled to avail itself to the exclusive remedy provisions of the Act. See *id.* at 204.

¶ 23    Although we agree that the instant case is also similar factually to *Laffoon*, our supreme court in that case did not have to consider a preexisting contractual obligation to provide workers' compensation benefits under the facts of the case because there was no evidence that the general contractors had preexisting legal obligations to pay for workers' compensation insurance. And, indeed, in *Laffoon*, 65 Ill. 2d at 447, our supreme court was concerned about the "factual situation[ ]" presented in the case. The situation from *Laffoon* is not present here because Bulley LLC had a preexisting legal obligation to pay for workers' compensation insurance and any benefits that may result by virtue of the contract it executed with South Riverside. Consequently, the circuit court correctly found that the exclusive remedy provisions of the Act barred the lawsuit by plaintiff against Bulley LLC and properly granted Bulley LLC's motion to dismiss.

¶ 24                                III. CONCLUSION

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 26    Affirmed.

Filed February 10, 2021

**No. 1-20-0254**

| | |
|---|---|
| **Cite as:** | *Munoz v. Bulley & Andrews, LLC*, 2021 IL App (1st) 200254 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-3878; the Hon. Daniel T. Gillespie, Judge, presiding. |
| **Attorneys for Appellant:** | Milo W. Lundblad, of Brustin & Lundblad, Ltd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patricia J. Hogan, Henry Ortiz, and James F. Maruna, of Cassiday Schade LLP, of Chicago, for appellee. |