2019 IL App (2d) 180727
No. 2-18-0727
Opinion filed July 24, 2019

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR OF LAKE COUNTY ILLINOIS, for Judgment and Order of Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes and Special Assessment for the Year 2014 and prior years | ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Lake County.<br><br><br><br>18-TD-5<br>15-TX-1 |
| (Fina IP, LLC, Petitioner-Appellee, v. Lake County Treasurer, Respondent-Appellant). | ) ) ) ) | Honorable<br>Michael B. Betar,<br>Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Schostok and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1 Respondent, the Lake County Treasurer (Treasurer), appeals the trial court's order granting a sale in error to petitioner, Fina IP, LLC (Fina), pursuant to section 22-35 of the Property Tax Code (Code) (35 ILCS 200/22-35 (West 2016)). The Treasurer contends that section 22-35 does not allow a tax purchaser to petition for a sale in error on the basis of a lien from a special district for unpaid usage fees. Because section 22-35 does not include special district liens, we determine that the legislature did not intend to allow them as a basis to petition for a sale in error, and we reverse the trial court's decision.

¶ 2 I. BACKGROUND

¶ 3    Because there is no record of the underlying proceedings, the following facts are derived from the limited common-law record and the parties' agreed statement of facts pursuant to Illinois Supreme Court Rule 323(d) (eff. July 1, 2017).

¶ 4    On November 14, 2015, the Lake County Collector conducted a tax sale on a single-family home located at 2022 Honore Avenue in North Chicago (the property). On November 16, 2015, Fina successfully purchased the property for the taxes, interest, penalties, and costs for 2014. Thereafter, Fina obtained, and has since held, the certificate of sale for the property.

¶ 5    On January 26, 2018, approximately five months before the end of the redemption period, Fina petitioned the trial court to direct the Lake County Clerk to issue Fina a tax deed to the property if the property were not redeemed. In the alternative, if the court found that Fina was not entitled to a tax deed for failing to comply with the Code, Fina requested a refund of the taxes it paid at the tax sale.

¶ 6    Fina provided notice of the tax sale, the redemption period, its petition for a tax deed, and future court dates to several interested individuals and entities, including the North Shore Water Reclamation District (District), formerly known as the North Shore Sanitary District. See 70 ILCS 2305/4 (West 2016) (providing the District's board of trustees with the authority to change the name of the District). The North Shore Water Reclamation District Act identifies the District as a "municipal corporation." *Id.* The District provides wastewater-treatment services to the property and the surrounding area and has deemed itself a "municipal body" on its website. The District received notice because it filed a lien on the property on December 16, 2014, now totaling $1143.95, for unpaid usage fees owed to it by the then-owner of the property. The owner did not redeem the back taxes during the redemption period.

¶ 7 On May 30, 2018, Fina petitioned the trial court to declare a sale in error, because of the District's lien, pursuant to section 22-35 of the Code. Section 22-35 of the Code reads in its entirety:

"Reimbursement of a county or municipality before issuance of tax deed. Except in any proceeding in which the tax purchaser is a county acting as a trustee for taxing districts as provided in Section 21-90, an order for the issuance of a tax deed under this Code shall not be entered affecting the title to or interest in any property in which a county, city, village or incorporated town has an interest under the police and welfare power by advancements made from public funds, until the purchaser or assignee makes reimbursement to the county, city, village or incorporated town of the money so advanced or the county, city, village, or town waives its lien on the property for the money so advanced. However, in lieu of reimbursement or waiver, the purchaser or his or her assignee may make application for and the court shall order that the tax purchase be set aside as a sale in error. A filing or appearance fee shall not be required of a county, city, village or incorporated town seeking to enforce its claim under this Section in a tax deed proceeding." 35 ILCS 200/22-35 (West 2016).

In its petition, Fina requested that the court order the Lake County Clerk to refund the amount that Fina paid, plus interest. Attached to the petition was a copy of the "Notice of Lien" filed by the District, although it is neither identified in the petition as an exhibit nor labeled as such.

¶ 8 On July 9, 2018, the Treasurer, through the Lake County State's Attorney, filed a response to Fina's petition, arguing that a sale in error based on the District's lien was not available to Fina. Specifically, the Treasurer argued that the District is not the type of public entity that falls under the municipal-lien provision in section 22-35, because it is not "a county,

city, village or incorporated town," and that Fina was therefore not entitled to a sale in error under section 22-35.

¶ 9 Fina was granted leave to reply to the Treasurer's response. In its reply, Fina argued that there is no significant difference between a municipal corporation, like the District, and "a county, city, village or incorporated town," because landowners do not have a choice in their public sewer providers. Fina also argued that a failure to grant its petition for a sale in error would create an absurdity unintended by the legislature, namely allowing a sale in error when a "sewer lien" is filed by a city but not by a special district.

¶ 10 On August 17, 2018, the trial court granted Fina's petition. The order reads in its entirety:

"Cause coming to be heard on Petition for Sale in Error, the matter being fully briefed and arguments having been presented in open court, IT IS HEREBY ORDERED: Petition for Sale in error is granted over the objection of the County Collector. The for sale certificate holder shall surrender the certificate to the County Collector for the amount paid at sale and costs as provided by Statute. The County Collector shall keep the taxes as a forfeiture on the Collector's rolls."

The Treasurer timely appealed.

¶ 11                                    II. ANALYSIS

¶ 12 On appeal, the Treasurer reiterates the argument it made to the trial court: because the District's lien was not from a county, city, village, or incorporated town, the lien did not entitle Fina to a sale in error under the plain language of section 22-35. The Treasurer argues that the District is identified as a "municipal corporation," which does not fall into any of the categories delineated in the statute. Fina contends, in a two-page argument that leaves much to be desired, that there is no significant difference between a special district and a county, city, village, or

incorporated town and that failing to grant it a sale in error pursuant to section 22-35 would create an absurdity. Thus, the question for us is whether section 22-35 applies to a special district's lien. Because this dispute requires us to construe the language of a statute, it presents a question of law, which we review *de novo*. *Cassidy v. China Vitamins, LLC*, 2018 IL 122873, ¶ 15.

¶ 13    Here, the specific language at issue provides:

"[A]n order for the issuance of a tax deed under this Code shall not be entered affecting the title to or interest in any property in which a county, city, village or incorporated town has an interest under the police and welfare power by advancements made from public funds, until the purchaser *** makes reimbursement to the county, city, village or incorporated town of the money so advanced or the county, city, village, or town waives its lien on the property ***. However, in lieu of reimbursement or waiver, the purchaser *** may make application for and the court shall order that the tax purchase be set aside as a sale in error." 35 ILCS 200/22-35 (West 2016).

¶ 14    The primary rule of statutory construction is to ascertain and effectuate the intent of the legislature. *In re Application of the County Treasurer of Cook County*, 343 Ill. App. 3d 122, 125 (2003). The statutory language, given its plain and ordinary meaning, is the most reliable indicator of that legislative intent, but a literal meaning must fail if it yields an absurd, inconvenient, or unjust result. *Cassidy*, 2018 IL 122873, ¶ 17. Courts view a statute as a whole, construing words and phrases in light of other relevant provisions of the statute and not in isolation. *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007). Where the language of a statute is clear, it will be given effect without resort to other aids of construction. *Zabinsky v. Gelber Group, Inc.*, 347 Ill. App. 3d 243, 249 (2004). "Additionally, the court may consider the reason

for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 25.

¶ 15    Fina submits that the intent of section 22-35 is "clearly to allow a tax buyer to obtain a sale in error whenever a property is encumbered by a water or sewer lien." This proposition is unsupported by both the statute's plain language and its legislative history. Section 22-35 specifically dictates that a tax purchaser may obtain a sale in error when one of four municipal entities has advanced money from public funds pursuant to its police and welfare power and subsequently received a lien on a property from that advancement. For two reasons, the lien at issue does not comport with the statute's provisions for a sale in error: first, section 22-35 does not include special districts in its list of municipalities that can establish a lien, and second, the lien does not stem from an advancement of public funds.

¶ 16    Turning to the first reason, Fina argues that, because the District provides a service that a county, city, village, or incorporated town could also provide, and because homeowners "do[ ] not have a choice of [wastewater treatment] providers," failing to apply section 22-35 to the District's lien risks an absurd result. This argument is unpersuasive.

¶ 17    Section 22-35 plainly dictates that a buyer may receive a sale in error when a lien exists from funds advanced by one of four public entities: a county, city, village, or incorporated town. Notably missing from that list is a "water reclamation district," "sanitation district," "special district," or any catch-all provision allowing for such entities to be included. The Code does not define a "county, city, village or incorporated town." However, the Illinois Municipal Code provides that a municipality is a "city, village, or incorporated town" and specifically notes that,

unless the context provides otherwise, "municipality" does not include a "sanitary district or any other similar governmental district." 65 ILCS 5/1-1-2(1) (West 2016).

¶ 18    Indeed, there is a stark difference between the listed entities and a special district. Municipalities have broad police power and the discretion to determine not only what the interests of the public welfare require but also what measures are necessary to secure those interests. *Drury v. Village of Barrington Hills*, 2018 IL App (1st) 173042, ¶ 75. On the other hand, "[a] 'special district' is a relatively autonomous local government which provides *a single service*." (Emphasis added.) *Chicago Transit Authority v. Danaher*, 40 Ill. App. 3d 913, 917 (1976). In the instant case, the District provided wastewater-treatment services to the property and the surrounding area. 70 ILCS 2305/1 (West 2016). While a city or a county could have provided the services, neither did.

¶ 19    Fina also argues that the District is a "municipal corporation," which should be read into the list of municipalities in section 22-35. Similarly, this is unpersuasive. As noted above, a special district provides a singular service to a community, in this case wastewater-treatment services. It does not have the same characteristics as a county, city, village, or incorporated town, which include broad police and welfare powers. Courts have identified several bodies as municipal corporations, including transit authorities (*People v. Chicago Transit Authority*, 392 Ill. 77, 89 (1945)), boards of education (*Gustafson v. Wethersfield Township High School District 191*, 319 Ill. App. 255, 257 (1943)), hospital districts (*Sappington v. Sparta Municipal Hospital District*, 106 Ill. App. 2d 255, 256 (1969)), and port districts (*In re Proposed Incorporation of Village of Beach Park*, 158 Ill. App. 3d 207, 211 (1987)). But that designation alone does not transform a body into a municipality, nor does it provide the body with the broad police and welfare powers of a municipality.

¶ 20    Because the plain and unambiguous language of section 22-35 does not include the phrase "special district" or "municipal corporation," we will not presume that the legislature intended to include such entities. We note that in 2015 section 22-35 was amended to add "county" to the list of municipalities. See Pub. Act 98-1162 (eff. June 1, 2015) (amending 35 ILCS 200/22-35). Tellingly, in its floor discussions, the legislature did not consider adding "special districts," "municipal corporations," or any catch-all provision that would include them. "Municipalities already have this ability [to maintain a lien on a property at a tax sale]. So, what [the amendment] would do is simply allow counties the same opportunity as municipalities." 98th Ill. Gen. Assem., House Proceedings, Dec. 3, 2014, at 110 (statements of Representative Mayfield). "All that [the amendment] does is it allows counties to have the same rights that municipalities have [to maintain a lien on a property at a tax sale]." 98th Ill. Gen. Assem., Senate Proceedings, Mar. 4, 2014, at 15 (statements of Senator Bush). If the legislature had wanted to include special districts or municipal corporations in section 22-35, it could have done so. Because it did not, we will not read those entities into section 22-35.

¶ 21    Turning to the second reason, the lien at issue does not stem from the advancement of public funds, as required by section 22-35 of the Code. Rather, the lien stemmed from unpaid usage fees owed by the former owner of the property. A fee is defined as "[a] charge or payment for labor or services," in this case, wastewater treatment. Black's Law Dictionary (11th ed. 2019). Courts have recognized an advancement of public funds under section 22-35 and its predecessor for demolishing buildings on lots (*In re Application of the County Treasurer of Cook County*, 343 Ill. App. 3d at 126), cutting weeds on lots (*In re Application of the County Collector for Judgment & Order of Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 2009*, 2015 IL App (4th) 140810, ¶ 9), and prosecuting building code

violations (*In re Application of the County Collector for Judgment & Order of Sale Against Lands & Lots Returned Delinquent for Non-Payment of General Taxes & Special Assessments for the Year 1983 & Prior Years*, 206 Ill. App. 3d 22, 28 (1990)). Each of those reasons provides for the safety and welfare of the community at large, not for recouping payment for a service rendered.

¶ 22    Furthermore, the legislative history of section 22-35 demonstrates that, on multiple occasions, the legislature identified the funds described in the Code as those that a municipality advances to take care of abandoned or hazardous properties, not to recoup usage fees. "A lot of times municipalities may cut weeds down of—of vacant properties. If they're sold, then the purchaser of that property is required to either get a lien or to reimburse that municipality for the funds expended." 93d Ill. Gen. Assem., Senate Proceedings, Apr. 8, 2003, at 133 (statements of Senator Clayborne). "This Bill simply allows counties to recap taxpayer funds spent to eliminate a hazardous. . . a hazard on property, if the property goes to a tax sale." 98th Ill. Gen. Assem., House Proceedings, Dec. 3, 2014, at 110 (statements of Representative Mayfield). "When there is a building that's torn down for safety reasons, it allows them to have a lien on the property at tax sale." 98th Ill. Gen. Assem., Senate Proceedings, Mar. 4, 2014, at 15 (statements of Senator Bush). This language suggests that the legislature was concerned with counties and municipalities being reimbursed for caring for abandoned or hazardous properties within their control, not with ensuring that they receive compensation for services rendered.

¶ 23    Because the plain language of section 22-35 does not provide for special districts' liens for usage fees, and because the legislative history does not support a broader reading of the statute to include such liens, we find that the trial court erred in granting Fina's petition to

declare a sale in error. We therefore reverse the trial court's ruling and remand the matter for further proceedings under the Code.

¶ 24                                    III. CONCLUSION

¶ 25     The judgment of the circuit court of Lake County is reversed and the cause is remanded.

¶ 26     Reversed and remanded.