2023 IL App (2d) 220124
No. 2-22-0124
Opinion filed June 7, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* ESTATE OF JOSEPH D. NOCCHI, Deceased | ) ) ) ) ) ) ) | Appeal from the Circuit Court of Kane County.<br><br>No. 20-P-213<br><br>Honorable |
| (Rebecca Nocchi, Petitioner-Appellant, v. Joshua Nocchi, Respondent-Appellee). | ) ) | Joseph M. Grady, Judge, Presiding. |

_____

JUSTICE KENNEDY delivered the judgment of the court, with opinion.
Justices Hutchinson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal concerns the right to control the disposition of the late Joseph D. Nocchi's

cremated remains. Petitioner, Rebecca Nocchi, decedent's widow, contends that, as executor of

decedent's estate, she is entitled to such control under section 5 of the Disposition of Remains Act

(Act) (755 ILCS 65/5 (West 2020)). Respondent, Joshua Nocchi, who is decedent's and Rebecca's

son, maintains that the trial court properly ordered Rebecca to turn over decedent's remains to him

for interment in accordance with decedent's religious convictions. We vacate and remand.

¶ 2                                    I. BACKGROUND

¶ 3     On April 28, 2020, Joshua filed a complaint against Rebecca, seeking a temporary

restraining order (TRO) to prevent Rebecca from gaining access to a safe deposit box at Elgin

State Bank (bank) that possibly contained a will executed by decedent. The complaint alleged that

Rebecca had threatened to destroy the will if found in the safe deposit box. The trial court entered a TRO, barring anyone from opening the safe deposit box, pending a hearing on whether to issue a preliminary injunction. The trial court subsequently entered an agreed order that a bank representative open the safe deposit box in the presence of the parties and their attorneys. If a will were in the box, the bank would provide copies to the parties and mail the original to the Clerk of the Circuit Court of Kane County for filing. The box was opened per the agreed order but contained no will.

¶ 4    On July 27, 2020, Rebecca filed a petition for letters of administration of decedent's intestate estate. On August 4, 2020, the trial court appointed Rebecca as the independent administrator of decedent's estate. Shortly thereafter, Rebecca discovered a will executed by decedent in 2003. On October 8, 2020, decedent's daughter, Christina Nocchi Brown, filed a *pro se* motion for "review of exhibits" that supposedly established that decedent more recently executed a will in 2014. On October 19, 2020, Rebecca filed a petition to probate the 2003 will, which designated her executor.

¶ 5    A written order from November 25, 2020, indicates that the trial court held a status hearing on that date, but there is no report of proceedings in the record. The order states that, at the hearing, Christina was concerned about the disposition of decedent's remains. Christina wanted to ensure that decedent's remains would be buried after their return to Rebecca.[1] Rebecca then "indicat[ed] to the [trial court] that as [decedent's] surviving [w]idow, she would make the decision regarding [decedent's] remains." The trial court determined that decedent had no will other than the one executed in 2003. The trial court granted Rebecca leave to "[i]nventory the [e]state and begin the process of carrying out the terms of the [w]ill, subject to [c]ourt approval." The order also

_____

[1]As the record indicates, decedent's body had been donated to scientific research.

provided, "[Rebecca] is restrained from disposing of the last remains of [decedent] until further [o]rder of the [c]ourt."

¶ 6      On October 25, 2021, Rebecca filed a motion to release decedent's remains to her for final disposition. The motion indicated that decedent's body had been donated to the Anatomical Gift Association of Illinois (AGA). AGA cremated decedent's body in August 2021, and returned the remains to Rebecca on September 11, 2021. Rebecca relied on section 5 of the Act (*id.*), which lists by priority the individuals who have authority to control the disposition of a decedent's remains absent the decedent's written directive. Rebecca contended that, because decedent left no written directive for the disposition of his remains, she, as executor of decedent's estate, was entitled to control the disposition of the remains.

¶ 7      The trial court heard the motion on March 23, 2022. Joshua's attorney advised the court that decedent had been Catholic and belonged to the Knights of Columbus. Joshua's attorney indicated that, under Catholic "guidelines," a funeral liturgy should occur before cremation. Joshua's attorney added that, as he understood the guidelines, "if cremation takes place before the funeral liturgy[,] like here, a burial place is granted (unintelligible—phone disturbance) or cremated wherein remains must be established [*sic*] in order to celebrate the funeral liturgy in the church." Joshua's attorney asked the trial court to order Rebecca to give half of decedent's ashes to his children. Regarding section 5 of the Act, Joshua's attorney argued that the legislature "didn't intend to have the cremated remains be held hostage, as it were, in a situation where we know that [decedent's] religious devotion wanted him to be buried or at least part of his ashes to be buried in a certain way." In response, Rebecca's attorney argued that the Act entitled Rebecca to control the disposition of the remains.

¶ 8 In stating its ruling, the trial court noted that it had "no doubt" that Rebecca's attorney was "correct on what the law is." Nonetheless, the trial court denied Rebecca's motion and entered a written order on March 24, 2022, that she turn over decedent's cremated remains to Joshua for "internment [*sic*] and burial in conjunction with decedent's apparent wishes for burial in accordance with the Catholic Church and the Knights of Columbus." Rebecca filed a timely motion to reconsider. The trial court denied the motion, and this appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10 Rebecca argues that the trial court erred in ordering her to turn over decedent's remains to Joshua. We agree.

¶ 11 The following statutory provisions govern the outcome of this appeal. Section 5 of the Act provides, in pertinent part:

> "Unless a decedent has left directions in writing for the disposition or designated an agent to direct the disposition of the decedent's remains as provided in Section 65 of the Crematory Regulation Act or in subsection (a) of Section 40 of this Act, the following persons, in the priority listed, have the right to control the disposition, including cremation, of the decedent's remains and are liable for the reasonable costs of the disposition:
>
> > (1) the person designated in a written instrument that satisfies the provisions of Sections 10 and 15 of this Act;
> >
> > (2) any person serving as executor or legal representative of the decedent's estate and acting according to the decedent's written instructions contained in the decedent's will;
> >
> > (3) the individual who was the spouse of the decedent at the time of the decedent's death[.]" *Id.*

¶ 12    Section 40(a) of the Act provides, in pertinent part:

"A person may provide written directions for the disposition or designate an agent to direct the disposition, including cremation, of the person's remains in a will, a prepaid funeral or burial contract, a power of attorney that satisfies the provisions of Article IV—Powers of Attorney for Health Care of the Illinois Power of Attorney Act and contains a power to direct the disposition of remains, a cremation authorization form that complies with the Crematory Regulation Act, or in a written instrument that satisfies the provisions of Sections 10 and 15 and that is signed by the person and notarized." *Id.* § 40(a).

Section 10 of the Act (*id.* § 10) specifies the form of an instrument designating an agent to control the disposition of the decedent's remains. Section 15 (*id.* § 15) provides that the instrument is sufficient if its wording substantially complies with section 10. In addition, section 15 (*id.*) provides that the instrument must bear the agent's signature and the decedent's notarized signature.

¶ 13    Section 65(a) of the Crematory Regulation Act (410 ILCS 18/65(a) (West 2020)) provides, in pertinent part:

"Any person, or anyone who has legal authority to act on behalf of a person, on a pre-need basis, may authorize his or her own cremation and the final disposition of his or her cremated remains by executing, as the authorizing agent, a cremation authorization form on a pre-need basis."

¶ 14    Rebecca argues that, as executor of decedent's estate, she is entitled under section 5(2) of the Act (755 ILCS 65/5(2) (West 2020)) to control the disposition of decedent's remains. The argument presents a question of statutory construction. As our supreme court has explained:

"[O]ur primary goal of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the intention of the legislature. [Citation.] The best indication

of that intent is the statutory language, which, when clear and unambiguous, must be construed as written, without reading into it exceptions, conditions, or limitations that the legislature did not express." *Elam v. Municipal Officers Electoral Board for Riverdale*, 2021 IL 127080, ¶ 14.

We review *de novo* issues of statutory construction. *Munoz v. Bulley & Andrews, LLC*, 2022 IL 127067, ¶ 20.

¶ 15    Joshua does not argue that the language of the Act is unclear or ambiguous. He also does not claim that decedent "left directions in writing for the disposition or designated an agent to direct the disposition of the decedent's remains," per section 5 of the Act (755 ILCS 65/5 (West 2020)). Nor, finally, does he dispute that, because decedent made no provision for the disposition of his remains, section 5's plain language dictates that Rebecca, as executor of decedent's estate, has the right to control the disposition of his remains. Rather, Joshua contends that the trial court properly "deviated from the statute based on the equitable argument that such a devout Catholic as [decedent] would want his remains disposed of in accordance with Catholic doctrine." Joshua relies on the principle that a court must depart from the literal meaning of statutory language "if it yields an absurd, inconvenient, or unjust result." *In re Application of the County Treasurer & ex officio County Collector of Lake County*, 2019 IL App (2d) 180727, ¶ 14. Joshua maintains that "[t]he legislature did not intend for an administrator or executor to have unilateral power to ignore a decedent's religious faith in exercising dispositional control." According to Joshua, the trial court reasonably concluded that "the outcome sought by [Rebecca] was unjust." We disagree.

¶ 16    First, we note that "[a] court may not simply dispense with the plain requirements of a statute by drawing on its equitable powers." *Rockford Drop Forge Co. v. Pollution Control Board*, 221 Ill. App. 3d 505, 512 (1991). Second, even assuming that Rebecca's plans for her late

husband's remains do not comport with Catholic doctrine, honoring her statutory right to control the disposition of his remains is not unjust. The Act allows one to plan for the disposition of one's remains by providing direction in a will, a prepaid funeral or burial contract, a qualifying power of attorney, or a cremation authorization form. See 755 ILCS 65/40(a) (West 2022). Alternatively, one can execute a written instrument designating an agent to control the disposition of one's remains. *Id.* Among its salutary features, the Act avoids litigation over the disposition of a decedent's remains; if the decedent has not documented wishes as the Act allows, the Act specifies the person with the right to control the disposition of the remains. Allowing others to challenge that person's authority because that person's plan for the disposition of a decedent's remains is contrary to the decedent's wishes (not properly documented under the Act) could conceivably inundate courts with litigation that the decedent's proper advance planning could easily avoid. We emphasize that such litigation would not arise only from religious differences. There are countless other reasons why a decedent might have opposed the plan of the person authorized by statute to determine the disposition of the decedent's remains. Applying the statute's plain language, written to avoid such litigation, is not unjust merely because, in some instances, doing so might frustrate a decedent's wishes.

¶ 17    We posit an analogy between the Act and the laws of intestate succession, which can similarly frustrate a decedent's intention regarding the disposition of the decedent's property. It is firmly established that, when property passes under the intestacy laws, a court will not effectuate a decedent's intention—no matter how strongly expressed—to disinherit an heir. *In re Estate of Schlenker*, 338 Ill. App. 3d 761, 763-64 (2003). If the legislature countenanced that result, we see no reason it could not have intended an analogous result here. Accordingly, we see no justification for departing from the plain language of the Act.

¶ 18    Decedent had ample opportunity during his lifetime to ensure that his remains would be disposed of per his wishes by specifying those wishes in a will, a prepaid funeral or burial contract, a qualifying power of attorney, or a cremation authorization form. See 755 ILCS 65/40 (West 2022). Alternatively, decedent could have named a person other than Rebecca to control the disposition of his remains. *Id.* §§ 10, 15. As far as the record shows, however, decedent failed to avail himself of any of these options. Consequently, section 5(2) of the Act gives Rebecca, as executor of decedent's estate, control of the disposition of his remains. *Id.* § 5(2).

¶ 19    Joshua cites *Rekosh v. Parks*, 316 Ill. App. 3d 58 (2000), *abrogated on other grounds by Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, to support his argument that the trial court should have effectuated decedent's wishes as to the disposition of his remains. In *Rekosh*, we held that the sons of the late Roy Rekosh stated a cause of action for intentional infliction of emotional distress against Rekosh's former wife, where the sons alleged that, by falsely claiming to be Rekosh's current spouse, she arranged for Rekosh's cremation and the ashes to be returned to her. *Id.* at 64-67. We fail to see what bearing that case has here.

¶ 20    Therefore, we vacate the order of March 24, 2022, and remand for the entry of an order releasing decedent's remains to Rebecca for final disposition.

¶ 21                                III. CONCLUSION

¶ 22    For the reasons stated, we vacate the March 24, 2022, order of the circuit court of Kane County and remand for the entry of an order releasing decedent's remains to Rebecca for final disposition.

¶ 23    Vacated and remanded.

*In re Estate of Nocchi*, 2023 IL App (2d) 220124

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 20-P-213; the Hon. Joseph M. Grady, Judge, presiding. |
| **Attorneys for Appellant:** | Randy K. Johnson, of West Dundee, for appellant. |
| **Attorneys for Appellee:** | Scott P. Larson, of Vanek, Larson & Kolb LLC, of St. Charles, for appellee. |