# Illinois Official Reports

## Appellate Court

---

### *Burge v. Exelon Generation Co.*, 2015 IL App (2d) 141090

---

| | |
|---|---|
| Appellate Court Caption | RICK BURGE and NELDA M. BURGE, Plaintiffs-Appellants, v. EXELON GENERATION COMPANY, LLC, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-14-1090 |
| Filed | July 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Ogle County, No. 12-L-8; the Hon. John B. Roe, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Elizabeth Uhrich and Louis F. Pignatelli, both of Pignatelli & Associates, P.C., of Rock Falls, for appellants.<br><br>Daniel G. Wills and Jonathan R. Walton, both of Swanson, Martin & Bell, LLP, of Chicago, and Donna R. Honzel, of Mateer Goff & Honzel LLP, of Rockford, for appellee. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Justices Burke and Spence concurred in the judgment and opinion. |

¶ 1    Plaintiffs, Rick Burge and Nelda M. Burge, appeal from an order of the circuit court of Ogle County granting the motion of defendant, Exelon Generation Company, LLC, to dismiss plaintiffs' two-count negligence complaint. Defendant successfully argued that plaintiffs' exclusive remedy was under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2012)). We reverse and remand for further proceedings.

¶ 2    Count I of the complaint sought recovery for injuries Rick allegedly suffered due to the unsafe condition of defendant's premises. Count II sought recovery for Nelda's loss of Rick's services and earnings and his love, affection, and companionship. It is undisputed that Rick's injuries arose out of and in the course of his employment with Exelon Nuclear Security, LLC (ENS), and that Rick filed and settled a workers' compensation claim against ENS. ENS is a Delaware limited liability company organized pursuant to an agreement (the LLC Agreement) making defendant the sole member of ENS. ENS provided security services on defendant's premises pursuant to a contract with defendant. Additional relevant facts will be set forth in our analysis of the issue raised on appeal.

¶ 3    At the outset, we note that, although defendant's motion to dismiss did not indicate that it was brought pursuant to any particular provision of the Code of Civil Procedure (Code) (735 ILCS 5/1-101 *et seq.* (West 2012)), the motion was, in substance, brought pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2012)). Section 2-619 provides that an action may be dismissed, on the motion of the defendant, based on various enumerated defenses (735 ILCS 5/2-619(a)(1)-(8) (West 2012)) or "other affirmative matter avoiding the legal effect of or defeating the claim" (735 ILCS 5/2-619(a)(9) (West 2012)). A section 2-619 motion must be supported by affidavits establishing grounds for dismissal that do not appear on the face of the complaint. 735 ILCS 5/2-619(a) (West 2012); *Becker v. Zellner*, 292 Ill. App. 3d 116, 124 (1997). As our supreme court has noted, "[a]n appeal from a section 2-619 dismissal is similar to an appeal following a grant of summary judgment, and both are subject to *de novo* review." *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 254 (2004). The question on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal is proper as a matter of law." *Id.*

¶ 4    Under section 1(a)(3) of the Act (820 ILCS 305/1(a)(3) (West 2012)), an employer "is liable to pay compensation to his own immediate employees ***, and in addition thereto if he directly or indirectly engages any contractor whether principal or sub-contractor to do any such work, he is liable to pay compensation to the employees of any such contractor or sub-contractor unless such contractor or sub-contractor has insured, in any company or association authorized under the laws of this State to insure the liability to pay compensation under this Act, or guaranteed his liability to pay such compensation." In its motion to dismiss, defendant contended that it was undisputed that it had engaged ENS as a contractor to provide security services on defendant's premises. Defendant argued that it was "the employer who paid workers' compensation benefits for the plaintiff Rick Burge" and that, pursuant to section 5(a) of the Act (820 ILCS 305/5(a) (West 2012)), plaintiffs could not maintain a common law action against defendant. Section 5(a) provides, in pertinent part:

    "No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker

to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." *Id.*

¶ 5 In support of its motion, defendant submitted the affidavit of Christine M. Wendt, the workers' compensation manager of the benefits department for Exelon Business Services Company. Wendt averred that she oversaw "the entire Exelon-related system of workers' compensation benefits." According to Wendt's affidavit, defendant used a third-party administrator/payor for workers' compensation benefits and "paid all monies for the [ENS account] made to or on the behalf of Rick Burge." Wendt averred that defendant "paid the worker's compensation benefits of any/all employees of [ENS], including [Rick], *as it was obligated to do under [section 1(a)(3) of the Act]*." (Emphasis added.)

¶ 6 In their written response to defendant's motion, plaintiffs relied, in part, on *Laffoon v. Bell & Zoller Coal Co.*, 65 Ill. 2d 437, 447 (1976), where our supreme court held that section 5(a) "confer[s] immunity upon employers only from common law or statutory actions for damages by their *immediate* employees." (Emphasis added.) Confronted with that legal authority, defendant stated in its reply to plaintiffs' response that its prior reference to its " 'obligations' " under section 1(a)(3) was "merely to the fact [that] the Act requires there to be coverage for workers/employees generally and [was] in no means intended to imply that [ENS] was uninsured." Defendant claimed, however, that it had reimbursed ENS for workers' compensation payments to ENS employees. Citing *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196 (2008), and *Villa v. Arthur Rubloff & Co. of Illinois*, 183 Ill. App. 3d 746 (1989), defendant argued that, because it had reimbursed ENS for workers' compensation payments, and because of its authority to manage ENS's affairs, it was cloaked with the same immunity as ENS. Defendant submitted a supplemental affidavit from Wendt stating that ENS was self-insured and that "[t]hrough the [LLC Agreement defendant] paid the workers' compensation benefits of any/all [ENS employees], including [Rick], on a reimbursement basis."

¶ 7 Plaintiffs filed a surreply, in which they argued that Wendt's affidavits consisted of conclusions rather than facts within her personal knowledge. Defendant responded that Wendt, as manager of "the entire Exelon-related system of workers' compensation," had personal knowledge of the matters stated in her affidavits. Defendant further argued that the evidence established that defendant and ENS were "a 'joint venture' as described in the *Ioerger* case and have an 'agency' relationship as described in the *Villa* case." Defendant reasoned that "[a]s in both [*Ioerger* and *Villa*] the Defendant and [ENS] are so closely related that both are entitled to the grant of immunity afforded by [section 5(a) of the Act] and that grant is completely consistent with the intent of the Act."

¶ 8 On appeal, plaintiffs argue that defendant was not Rick's employer and that, to enjoy immunity under section 5(a) from liability in a common law negligence lawsuit, defendant must establish at least that it was legally responsible for payment of workers' compensation benefits to Rick. Plaintiffs assert that Wendt "may be qualified to testify that Defendant actually footed the bill for [Rick's] benefits, but not that it was required to do so." Defendant responds that it is entitled to immunity as the agent of Rick's employer (ENS), regardless of

who paid or was obligated to pay workers' compensation to Rick. According to defendant, any defects in Wendt's affidavits were immaterial.

¶ 9 It is true that section 5(a) of the Act bars lawsuits against an employer's agents. 820 ILCS 305/5(a) (West 2012). However, we disagree with defendant's assertion that it was ENS's agent. Defendant relies on the powers conferred upon it by the LLC Agreement, which provides, in pertinent part:

"Management. The Management of [ENS] shall be vested in the sole member, Exelon Generation Company, LLC. The Member shall have exclusive authority over the business and affairs of [ENS] and shall have the full power and authority to authorize, approve or undertake any action on behalf of [ENS] and to bind [ENS], without the necessity of a meeting or other consultation. In connection with the foregoing, the Member is authorized and empowered:

a. to appoint, by written designation filed with the records of [ENS], one or more persons to act on behalf of [ENS] as officers of [ENS] with such titles as may be appropriate including the titles of President, Vice President, Treasurer, Secretary and Assistant Secretary, and

b. to delegate any and all power and authority with respect to the business and affairs of [ENS] to any individual or entity including any officers and employees of [ENS]. In the absence of appointment of officers, agents and employees of [ENS] shall have such power and authority to act on behalf of [ENS], as shall be conferred by the Member."

Quoting *Villa*, 183 Ill. App. 3d at 750, defendant argues that "[u]nder Illinois law, an agent is one who acts under authority from another to transact business for him or manage his affairs and who is required to act for the other." The argument is unpersuasive. It is well established that "[a]n agency is a fiduciary relationship in which the principal has the right to control the agent's conduct and the agent has the power to act on the principal's behalf." *Powell v. Dean Foods Co.*, 2013 IL App (1st) 082513-B, ¶ 65. We find nothing in the LLC Agreement that gives ENS any right to control defendant. Indeed, quite the opposite appears to be true. Because ENS has no right to control defendant, defendant is not ENS's agent.

¶ 10 The question we are left with is whether defendant's role, if any, in paying Rick's workers' compensation settlement confers immunity, pursuant to section 5(a), from a common-law action for damages. To answer this question, it is necessary first to consider the principles set forth in *Ioerger* and an earlier decision from our supreme court, *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274 (2007).

¶ 11 In *Forsythe*, the plaintiffs brought wrongful death actions against the defendant. The decedents, who were employees of a wholly owned subsidiary of the defendant, died in a fire at a refinery. *Id.* at 278. The fire allegedly occurred when other employees of the defendant's subsidiary attempted to replace a valve on a pipe without ensuring that flammable materials within the pipe had been depressurized. *Id.* The plaintiffs alleged that the employees who attempted to replace the valve were not qualified to do so. The plaintiffs further alleged that, as part of its overall budgetary strategy, the defendant required its subsidiary to engage in cost-cutting measures that prevented the subsidiary from properly training its employees and keeping the premises in a safe condition. *Id.* The defendant argued that it was merely a holding company and owed no duty to the employees of its subsidiary. *Id.* at 279. The trial court entered summary judgment for the defendant. *Id.* Our supreme court concluded that the

defendant could potentially be held liable under a theory of active participant liability. The court held that "[w]here there is evidence sufficient to prove that a parent company mandated an overall business and budgetary strategy *and* carried that strategy out by its own specific direction or authorization, surpassing the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary, that parent company could face liability." (Emphasis in original.) *Id.* at 290.

¶ 12    The *Forsythe* court concluded that there were genuine issues of material fact and the defendant was not entitled to judgment as a matter of law on the question of active participant liability. More significantly for present purposes, the *Forsythe* court rejected the defendant's argument that section 5(a) of the Act immunized it from active participant liability for injuries to workers employed by its subsidiary. In essence, the defendant asked to be treated as the decedents' employer on the basis that imposing active participant liability would be equivalent to piercing the corporate veil. The *Forsythe* court rejected the argument:

> "Direct participant liability, as we now recognize it, does not rest on piercing the corporate veil such that the liability of the subsidiary is the liability of the parent. On the contrary, this form of liability is asserted, as its name suggests, for a parent's direct participation, superseding the discretion and interest of the subsidiary, and creating conditions leading to the activity complained of. ***

> In essence, defendant is requesting that it be allowed to pierce its own corporate veil in order to avoid liability. Illinois courts have consistently expressed reluctance for allowing such a practice. [Citations.] The appellate court in this case recognized this point when it rejected defendant's attempt 'to have its cake and eat it too: asserting, on the one hand, that it was merely a shareholder in arguing that it owed no duty to the decedents, while, at the same time, attempting to invoke the Act's grant of immunity by characterizing itself as the decedents' employer.' [Citation.]
> ***

> *** It was [the subsidiary], not defendant, who paid workers' compensation benefits to the decedents' families. It was [the subsidiary], not defendant, who actually employed the decedents. As such it is [the subsidiary], not [the defendant], that should enjoy the exclusive remedy provision of the [Act]. We decline to allow [the defendant] to pierce its own corporate veil. Accordingly, the [Act] does not immunize defendant from liability." *Id.* at 297-98.

¶ 13    In contrast, in *Ioerger*, the court held that a joint venture was entitled to section 5(a) immunity from liability for injuries to employees of one of the two corporations engaged in the joint venture. After first concluding that the joint venture was entitled to immunity based on its agency relationship with the corporation that employed the injured workers, the *Ioerger* court held that the joint venture should also enjoy immunity because it was obligated under the joint-venture agreement to pay workers' compensation for the employees of both corporations. The *Ioerger* court reasoned as follows:

> "We observed in *Forsythe* [citation], that allowing a party who has paid nothing toward an injured employee's workers' compensation benefits to nevertheless invoke the Act's immunity to escape tort liability for the employee's injuries would be tantamount to allowing the party 'to have its cake and eat it too.' By the same token, subjecting a party to tort liability for an employee's injuries notwithstanding the fact that the party has borne the costs of the injured employee's workers' compensation insurance would

be the same as declaring that a party who has paid for the cake may neither keep it nor eat it.

> As these metaphors illustrate, *the immunity afforded by the Act's exclusive remedy provisions is predicated on the simple proposition that one who bears the burden of furnishing workers' compensation benefits for an injured employee should not also have to answer to that employee for civil damages in court.*" (Emphasis added.) *Ioerger*, 232 Ill. 2d at 203.

While one of the two corporations was responsible for the performance of all labor for the joint venture and for the payment of premiums for workers' compensation insurance, that corporation was entitled to reimbursement from the joint venture pursuant to the terms of the agreement. *Id.* at 204. Because the joint venture had the "[u]ltimate responsibility" for payment of the premiums, "it was entitled to avail itself of the Act's exclusive remedy provisions." *Id.*

¶ 14 We agree with plaintiffs that the reasoning in *Ioerger* depends on the existence of some preexisting legal obligation to pay, or reimburse another payor, for compensation due under the Act or for premiums for workers' compensation insurance. The Act makes no provision for an entity that is legally distinct from the employer to unilaterally insulate itself against liability for negligence. To allow such an entity to do so would be particularly problematic where the employer is self-insured and a separate entity could thus make reimbursement decisions on a case-by-case basis. In *Forsythe*, our supreme court observed:

> "[Section 5(a)] serves a balancing function. On the one hand, the Act establishes a new 'system of liability without fault, designed to distribute the cost of industrial injuries without regard to common-law doctrines of negligence, contributory negligence, assumption of risk, and the like.' [Citation.] On the other hand, the Act imposes 'statutory limitations upon the amount of the employee's recovery, depending upon the character and the extent of the injury' and provides 'that the statutory remedies under it shall serve as the employee's exclusive remedy if he sustains a compensable injury.' [Citation.]" *Forsythe*, 224 Ill. 2d at 296.

If the system is to maintain this balance, an entity cannot be permitted to choose whether to be treated like an employer or like a third party, depending on what appears the most to its advantage in a particular case.

¶ 15 Thus, we agree with plaintiffs that immunity under section 5(a) of the Act cannot be predicated on defendant's payment of workers' compensation unless defendant was under some legal obligation to pay (such as the contractual obligation imposed by the joint-venture agreement in *Ioerger*). We also agree with plaintiffs that the evidence on this point, to wit, Wendt's affidavits, falls short of establishing such an obligation.

¶ 16 Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) provides that affidavits in support of a section 2-619 motion "shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto."

¶ 17 Wendt's initial affidavit stated that defendant paid workers' compensation benefits to ENS employees "as it was obligated to do under [section 1(a)(3) of the Act]." However, in her

supplemental affidavit she stated that ENS was self-insured but that defendant reimbursed it "through" the LLC Agreement. To the extent that the word "through" is meant to imply that the LLC Agreement imposed a legal obligation upon defendant, it is a conclusion rather than a fact admissible in evidence. Moreover, the LLC Agreement, which is part of the record on appeal, says nothing about the obligation to provide workers' compensation insurance for ENS's employees.

¶ 18    Accordingly, defendant has failed to establish a basis for claiming immunity under section (5)(a) of the Act, and it was error to dismiss plaintiffs' complaint.

¶ 19    For the foregoing reasons, we reverse the judgment of the circuit court of Ogle County and remand for further proceedings.

¶ 20    Reversed and remanded.