**2022 IL 127067**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127067)

DONOVAN MUNOZ, Appellant, v. BULLEY & ANDREWS, LLC, Appellee.

*Opinion filed January 21, 2022.*

JUSTICE CARTER delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Neville, Michael J. Burke, and Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1     In this appeal, we address whether the exclusive remedy provisions under sections 5(a) and 11 of the Workers' Compensation Act (Act) (820 ILCS 305/5(a), 11 (West 2016)) extend to a general contractor who paid workers' compensation insurance premiums and benefits for a subcontractor and its employees. Plaintiff, Donovan Munoz, filed suit against defendant and general contractor, Bulley & Andrews, LLC (Bulley & Andrews), for injuries he sustained in 2016 while an

employee of defendant's subcontractor, Bulley & Andrews Concrete Restoration, LLC (Bulley Concrete).

¶ 2    The circuit court dismissed plaintiff's lawsuit on defendant's motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2016)). The circuit court of Cook County found that defendant was immune from the lawsuit under the exclusive remedy provisions of the Act. The appellate court affirmed the judgment of the circuit court. 2021 IL App (1st) 200254. We allowed plaintiff's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). We hold that, under the facts of this case, the exclusive remedy provisions under sections 5(a) and 11 of the Act do not extend to a general contractor who is not the employee's immediate employer. We reverse the judgments of the appellate court and the circuit court and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4    Defendant, Bulley & Andrews, is a corporation and the sole owner of Bulley Concrete. In March 2015, RAR2-222 South Riverside, LLC (RAR2-222), entered into an agreement with Bulley & Andrews to serve as the general contractor for a project located at 222 South Riverside in Chicago. Article 11, section 11.1 of the agreement required Bulley & Andrews, in relevant part, to

> "purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations and completed operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for those acts any of them may be liable.
>
>> .1 Claims under workers' compensation, disability benefit and other similar employee benefit acts that are applicable to the Work to be performed;

> .2 Claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;
>
> .3 Claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;
>
> .4 Claims for damages insured by usual personal injury liability coverage."

¶ 5    Bulley Concrete is a wholly owned subsidiary of Bulley & Andrews. Bulley Concrete was previously known as Takao Nagai Concrete Restoration (Takao Nagai). Bulley & Andrews bought Takao Nagai in 2010 and continued operating the company under the Takao Nagai name until approximately 2015. Bulley & Andrews and Bulley Concrete are operated as separate corporations. Each company has its own distinct federal tax identification number. The companies file separate federal and state income tax returns. The companies have different presidents and employ different workers. Bulley Concrete employs approximately 100 laborers, caulkers, and concrete finishers. Bulley & Andrews employs approximately 500 carpenters and laborers.

¶ 6    As part of the scope of the work for the project, Bulley & Andrews performed much of the concrete work itself, but no language to this effect was included in its contract with RAR2-222. Bully & Andrews used Bulley Concrete and its employees for the concrete work on the project. Bulley & Andrews executed contracts with other subcontractors for work on the project but did not enter into any such contract with Bulley Concrete.

¶ 7    Plaintiff, Donovan Munoz, was employed as a construction worker by Bulley Concrete. Plaintiff was injured on December 4, 2016, at the 222 South Riverside construction site while employed by Bulley Concrete. On that date, plaintiff signed in on a Bulley Concrete time sheet, and Bulley Concrete paid his wages. During the 2016 calendar year, Bulley Concrete withheld and paid federal and Illinois income taxes, Medicare, and Social Security taxes on behalf of plaintiff.

¶ 8    Prior to December 4, 2016, Bulley Concrete workers poured concrete at the 222 South Riverside construction site and covered the wet concrete with blankets to prevent it from freezing while it cured. On December 4, 2016, plaintiff was directed

by his employer, Bulley Concrete, to go to the 222 South Riverside project to pull the blankets off the fresh concrete to permit workers from another subcontractor to perform additional work on the concrete. While attempting to pull the blankets from the concrete, plaintiff injured his back.

¶ 9        Plaintiff filed a claim with the Illinois Workers' Compensation Commission against Bulley Concrete. Plaintiff incurred medical bills of $76,046.34 to treat his injury. He was also paid $2157.71 in temporary disability benefits. At the time of the occurrence, Bulley Concrete was an insured under a workers' compensation policy issued by Arch Insurance Company. Bulley & Andrews and other subsidiaries and affiliates of the company were insured under the same policy. Bulley & Andrews paid the premiums for the insurance. The policy provided for a $250,000 deductible for every claim.

¶ 10        On April 11, 2019, plaintiff filed a personal injury action against Bulley & Andrews, RAR2-222, and the management company that operated 222 S. Riverside, Behringer Harvard South Riverside, LLC (Behringer). Plaintiff alleged that Bulley & Andrews, in its capacity as general contractor, "retained control over the safety of the construction site, supervision of the work at the construction site, and control of the means and methods of the work on the construction site to ensure that all work was performed safely by all subcontractors, including [plaintiff's] employer." Plaintiff further alleged that Bulley & Andrews breached its duty of care by failing to use its retained control to stop plaintiff's employer, Bulley Concrete, from using unsafe equipment; by permitting an unsafe condition to be created through the use of worn, unfit, and defective concrete blankets; and by failing "to regulate and limit the hours worked by laborers, including plaintiff, thus making him more susceptible to injuring himself through repetitive lifting of heavy objects and construction materials."

¶ 11        Bulley & Andrews moved to dismiss plaintiff's complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2016)). Bulley & Andrews contended that plaintiff's claims were barred by the exclusive remedy provisions of the Act (820 ILCS 305/5(a), 11 (West 2016)). Bulley & Andrews argued that it had a preexisting legal obligation to pay for plaintiff's workers' compensation benefits and that it did so by paying more than $76,000 of his medical bills.

¶ 12    On December 27, 2019, the circuit court granted the motion to dismiss, finding that Bulley & Andrews was legally obligated under its contract with RAR2-222 to pay for the workers' compensation insurance and benefits that plaintiff received. The circuit court's order found there was no just reason to delay the enforcement or appeal of its order under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).[1] The appellate court affirmed. 2021 IL App (1st) 200254.

¶ 13    We allowed plaintiff's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). We also allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 14                                    II. ANALYSIS

¶ 15    The parties to this appeal dispute whether the circuit court properly granted the motion of Bulley & Andrews to dismiss under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2016)). Plaintiff argues that, because Bulley Concrete was his employer, the exclusive remedy provisions under sections 5(a) and 11 of the Act (820 ILCS 305/5(a), 11 (West 2016)) did not bar him from suing Bulley & Andrews. Thus, according to plaintiff, the circuit court improperly granted the section 2-619(a)(9) motion to dismiss.

¶ 16    Bulley & Andrews submits that the exclusive remedy provisions of the Act apply to bar plaintiff's cause of action because it was legally obligated under the contract with RAR2-222 to insure the project in all aspects, including workers' compensation coverage for its employees and those of its wholly owned subsidiaries such as Bulley Concrete. Accordingly, Bulley & Andrews argues that the circuit court properly dismissed plaintiff's cause of action.

¶ 17                                A. Standard of Review

¶ 18    This appeal involves a motion to dismiss under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2016)). This court recently reiterated that

---

[1]Defendants RAR2-222 and Behringer did not move to dismiss plaintiff's complaint against them, and the case continues as to those defendants.

" '[t]he purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation.' [Citation.] Section 2-619(a)(9) of the Code permits involuntary dismissal where 'the claim asserted against [the] defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim.' [Citation.]" *Valerio v. Moore Landscapes, LLC*, 2021 IL 126139, ¶ 19.

¶ 19    In ruling on a section 2-619 motion, a court " 'must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party.' " *Id.* ¶ 20 (quoting *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997)). A court must therefore accept as true all well-pleaded facts of the complaint and inferences that may be reasonably drawn in the plaintiff's favor. *Id.* A ruling on a section 2-619 motion to dismiss presents an issue of law that we review *de novo*. *Id.*

¶ 20    This appeal also raises an issue of statutory interpretation of sections 5(a) and 11 of the Act (820 ILCS 305/5(a), 11 (West 2016)). We review issues of statutory construction *de novo*. *Valerio*, 2021 IL 126139, ¶ 20. Finally, this appeal raises an issue of construction of the contract between Bulley & Andrews and RAR2-222. Construction of a contract also presents a question of law that we review *de novo*. *Id.*

¶ 21                        B. Workers' Compensation Act

¶ 22    This appeal requires us to consider whether plaintiff's cause of action against Bulley & Andrews is barred by the exclusivity provisions of the Act. 820 ILCS 305/5(a), 11 (West 2016). Our primary goal in interpreting the Act is to ascertain and give effect to the intent of the legislature. *Cassens Transport Co. v. Industrial Comm'n*, 218 Ill. 2d 519, 524 (2006). The most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. *Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 395 (2008). "It is well settled that courts cannot depart from the plain language of a statute by reading into it exceptions, limitation[s], or conditions not expressed by the legislature." *In re Haley D.*, 2011 IL 110886, ¶ 73.

¶ 23    The Act "is designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment." *Meerbrey v. Marshall*

*Field & Co.*, 139 Ill. 2d 455, 462 (1990). The purpose of workers' compensation is to place upon the industry the costs of industrial accidents. *Id.* at 469. The Act establishes a system of liability without fault by which the employer exchanges traditional common-law defenses for the prohibition of common-law suits against it. 820 ILCS 305/1 *et seq.* (West 2016); *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 296 (2007). The exclusive remedy provisions are part of the *quid pro quo* that balances the sacrifices and gains of employees and employers. *Meerbrey*, 139 Ill. 2d at 462. The exclusive remedy provisions are provided for in sections 5(a) and 11 of the Act. Section 5(a) of the Act states, in relevant part:

> "No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization that is wholly owned by the employer, his insurer or his broker and that provides safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." 820 ILCS 305/5(a) (West 2016).

Section 11 of the Act provides, in relevant part:

> "The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in section 3 of this Act, or of any employer who is not engaged in any such enterprises or businesses, but who has elected to provide and pay compensation for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act ***." *Id.* § 11.[2]

---

[2]We note that sections 5(a) and 11 of the Act were amended by Public Act 101-6, § 5 (eff. May 17, 2019). The amendment added section 1.2, exempting certain civil actions from the exclusive remedy provisions of sections 5(a) and 11. See 820 ILCS 305/1.2 (West 2020). The subject of this amendment is not at issue in this appeal.

¶ 24 There is no dispute that on December 4, 2016, plaintiff was an employee under the Act and that he was injured in the course of employment. Rather, the dispute in this appeal concerns whether Bulley & Andrews, who was not plaintiff's direct employer, enjoys the immunity afforded by the exclusive remedy provisions of the Act.

¶ 25 The term "employer" is defined in section 1(a) of the Act, as

"2. Every person, firm, public or private corporation *** who has any person in service or under any contract for hire, express or implied, oral or written, and who is engaged in any of the enterprises or businesses enumerated in Section 3 of this Act, or who at or prior to the time of the accident to the employee for which compensation under this Act may be claimed, has in the manner provided in this Act elected to become subject to the provisions of this Act, and who has not, prior to such accident, effected a withdrawal of such election in the manner provided in this Act.

3. Any one engaging in any business or enterprise referred to in subsections 1 and 2 of Section 3 of this Act who undertakes to do any work enumerated therein, is liable to pay compensation to his own immediate employees in accordance with the provisions of this Act, and in addition thereto if he directly or indirectly engages any contractor whether principal or sub-contractor to do any such work, he is liable to pay compensation to the employees of any such contractor or sub-contractor unless such contractor or sub-contractor has insured, in any company or association authorized under the laws of this State to insure the liability to pay compensation under this Act, or guaranteed his liability to pay such compensation. ***

In the event any such person pays compensation under this subsection he may recover the amount thereof from the contractor or sub-contractor, if any, and in the event the contractor pays compensation under this subsection he may recover the amount thereof from the sub-contractor, if any.

This subsection does not apply in any case where the accident occurs elsewhere than on, in or about the immediate premises on which the principal has contracted that the work be done." *Id.* § 1(a)(2), (3).

¶ 26    This court previously addressed this very issue in *Laffoon v. Bell & Zoller Coal Co.*, 65 Ill. 2d 437 (1976). *Laffoon* involved three consolidated appeals by injured workers employed by different subcontractors that did not provide them with workers' compensation insurance. In each instance, the general contractor that hired the uninsured subcontractor was required to pay compensation benefits to the injured employee under section 1(a)(3) of the Act (Ill. Rev. Stat. 1975, ch. 48, ¶ 138.1(a)(3)). *Laffoon*, 65 Ill. 2d at 440. The workers later sued the general contractors under the structural work statute (Ill. Rev. Stat. 1975, ch. 48, ¶ 60 *et seq.*). *Laffoon*, 65 Ill. 2d at 441. One of the general contractors moved for summary judgment, and two of the general contractors moved to dismiss the plaintiffs' causes of action. The general contractors claimed that, by paying the injured workers benefits under the Act, they were entitled to the same immunity conferred on employers by section 5(a). The trial courts agreed with the general contractors and granted summary judgment in favor of one of the general contractors and granted the motions to dismiss in favor of the other two general contractors. *Id.* at 441-43.

¶ 27    On appeal before this court, the general contractors maintained that section 5(a) of the Act provided them with immunity from an action for damages by an employee of an uninsured subcontractor when they were required to pay compensation benefits to the employee under section 1(a)(3) of the Act. *Id.* at 443. The workers claimed that section 5(a) was intended to provide immunity only to the employer of the injured employee. *Id.* This court rejected the general contractors' argument and held that only an injured worker's direct employer can claim immunity. *Id.* at 447. We specifically held:

> "[W]e must interpret section 5(a) as conferring immunity upon employers only from common law or statutory actions for damages by their immediate employees. To hold otherwise in light of the present factual situations would be violative of the injured employee's right to due process and equal protection of the laws." *Id.*

¶ 28    As this court made clear in *Laffoon*, immunity does not hinge on the payment of benefits. Rather, under the plain language of section 5(a), immunity is conferred only on immediate employers of an injured worker. *Id.* Here, there is no dispute

that Bulley & Andrews was not plaintiff's immediate employer. Therefore, plaintiff is not barred from suing Bulley & Andrews by sections 5(a) and 11 of the Act.

¶ 29 The fact that plaintiff's immediate employer, Bulley Concrete, was a subsidiary of Bulley & Andrews is of no import. If a parent company and its subsidiary are operated as separate entities, only the entity that was the immediate employer of the injured worker is entitled to section 5(a) immunity. See *Forsythe*, 224 Ill. 2d at 297-98. In this case, there is no dispute that Bulley & Andrews and Bulley Concrete were operated as separate and distinct entities. Each company had separate tax identification numbers, executives, project superintendents, and workers. Accordingly, Bulley & Andrews is not entitled to immunity under the Act.

¶ 30 Although the appellate court acknowledged that the case at bar is factually similar to *Laffoon*, it declined to follow our holding. 2021 IL App (1st) 200254, ¶ 23. The appellate court concluded that *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196 (2008), created a new test for immunity based on whether an entity paid compensation benefits to an injured worker pursuant to a preexisting legal obligation. 2021 IL App (1st) 200254, ¶¶ 22-23. The appellate court found that the contract between Bulley & Andrews and RAR2-222 provided the requisite legal obligation. *Id.*

¶ 31 In *Ioerger*, two companies formed a joint venture to perform a bridge repair project. *Ioerger*, 232 Ill. 2d at 198. Under the joint venture agreement, one entity, Midwest Foundation Corporation (Midwest) was responsible for performing all labor on the project. The joint venture, however, was obligated to reimburse Midwest for all labor costs, including premiums for workers' compensation insurance. *Id.* at 199. Three Midwest employees were injured, and one employee was killed, in an accident on the project. *Id.* at 199-200. The injured workers and the estate of the decedent received compensation benefits from Midwest's workers' compensation insurer. *Id.* at 200. The surviving employees and the estate of the decedent filed a civil action against the joint venture itself; the other co-venturer, Halverson Construction Company, Inc. (Halverson); and various other defendants. *Id.* Halverson and the joint venture each moved for summary judgment, claiming immunity under sections 5(a) and 11 of the Act. *Id.* at 200-01. The trial court agreed and granted the summary judgment motions. *Id.* at 201. The appellate court

reversed (*Ioerger v. Halverson Construction Co.*, 377 Ill. App. 3d 223 (2007)). *Ioerger*, 232 Ill. 2d at 201.

¶ 32　　On appeal to this court, we addressed the specific issue of "whether the immunity afforded to an employer by the exclusive remedy provisions of the Workers' Compensation Act *** extends to the employer's co-venturer in a joint venture and to the joint venture itself." *Id.* at 198. We examined the express terms of the Act and noted that the exclusive remedy provisions extend to the employer and other specified entities, including agents of the employer. *Id.* at 201-02. As to the joint venture itself, we found that, under Illinois law, joint ventures are governed by partnership principles. *Id.* at 202. Thus, the joint venture was not a separate legal entity under partnership law, and it was inseparable from its constituent entities. *Id.* at 202-03. We therefore concluded that, if each member of the joint venture was immunized, it necessarily followed that the joint venture itself was shielded by the exclusive remedy provisions of the Act. *Id.* at 203.

¶ 33　　A secondary reason to our holding in *Ioerger* was the existence of an agreement between the joint venture and the direct employer of the workers that required the joint venture to reimburse the employer for all labor costs, including workers' compensation insurance premiums. *Id.* at 203-04. Accordingly, we concluded that granting the joint venture immunity was appropriate "[b]ecause the Joint Venture bore the expense of the workers' compensation premiums and was thus responsible for making workers' compensation benefits available to plaintiffs," and "it was entitled to avail itself of the Act's exclusive remedy provisions." *Id.* at 204.

¶ 34　　*Ioerger* did not abrogate *Laffoon*. *Ioerger* did not discuss *Laffoon* because *Ioerger* concerned the specific and completely different issue of whether a joint venture is an agent of its members for purposes of immunity under section 5(a), which specifically provides that agents of an employer are also entitled to immunity. Section 5(a) of the Act plainly lists the specific entities entitled to immunity. Those entities include the employer of the injured worker, agents of the employer, the employer's insurer and broker, and "any service organization that is wholly owned by the employer, his insurer or his broker and that provides safety service, advice or recommendations for the employer or the agents or employees of any of them." 820 ILCS 305/5(a) (West 2016).

¶ 35    Section 5(a) of the Act includes no category granting nonemployers of the injured worker the ability to acquire immunity by either paying workers' compensation insurance premiums on behalf of the injured worker's direct employer or compensation benefits directly, as Bulley & Andrews did here. Nor does the Act make any provision for an entity that is legally distinct from the immediate employer to insulate itself against liability for its negligence by paying workers' compensation insurance premiums or benefits on behalf of the immediate employer of an injured worker. See *Burge v. Exelon Generation Co.*, 2015 IL App (2d) 141090, ¶ 14. To recognize a means by which immunity may be purchased by a general contractor who is not the injured worker's immediate employer would be contrary to the intended purpose of the Act. *Id.*

¶ 36    Moreover, while the Act bars an employee from bringing a civil suit directly against his or her employer, it does not limit the employee's recovery from a third-party general contractor. See 820 ILCS 305/5(a), (b) (West 2016). The "injured employee may also have a cause of action against a third party to the employment relationship, such as a general contractor, whose negligence allegedly caused or contributed to the employee's injuries." *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 557 (2007). Section 5(b) of the Act explicitly provides:

"Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act." 820 ILCS 305/5(b) (West 2016).

As such, the Act accords with the principle that the ultimate loss from wrongdoing should fall upon the wrongdoer as long as it is not the "employer." *In re Estate of Dierkes*, 191 Ill. 2d 326, 332 (2000).

¶ 37 Our decision in *Ioerger* was, therefore, clearly limited to the specific factual situation involving a joint venture and the existence of an agreement between the joint venture and the direct employer of the workers that required the joint venture to reimburse the employer for all labor costs, including workers' compensation insurance premiums. *Ioerger* differs in material facts and is clearly distinguishable from the facts of this case.

¶ 38 Here, Bulley & Andrews was not in a joint venture with plaintiff's immediate employer, Bulley Concrete, and had no legal obligation to provide workers' compensation insurance for Bulley Concrete. The evidence in this case is that Bulley & Andrews and Bulley Concrete operated as distinct business entities. There was no written contract between Bulley & Andrews and Bulley Concrete that required Bulley & Andrews to provide workers' compensation insurance or benefits to Bulley Concrete employees. We conclude that Bulley & Andrews was not, therefore, an agent entitled to avail itself of the Act's exclusive remedy provisions.

¶ 39 Further, even if Bulley & Andrews had met the agency requirements of the Act, we reject Bulley & Andrews's argument that it had a preexisting legal obligation under its agreement with RAR2-222 to provide workers' compensation insurance for the construction project. We note that Bulley Concrete was not a party to this agreement and, therefore, had no right to enforce any alleged obligation of Bulley & Andrews. Moreover, the agreement did not provide for Bulley & Andrews to purchase workers' compensation insurance for Bulley Concrete or provide workers' compensation insurance for any of its employees or for any subcontractor it used for the project. The agreement only provided that Bulley & Andrews would purchase insurance that would "protect [Bulley & Andrews] from claims *** which may arise out of or result from [Bulley & Andrews] operations and completed operations under the Contract and for which [Bulley & Andrews] may be legally liable whether such operations be by [Bulley & Andrews] or by a Subcontractor," including workers' compensation claims. The contract provision is, therefore, inapplicable to this case. Thus, not only was Bulley & Andrews not an agent

entitled to avail itself of the Act's exclusive remedy provisions, Bulley & Andrews had no legal obligation to provide workers' compensation insurance for Bulley Concrete employees. We reiterate, the Act includes no category granting nonemployers and legally distinct entities the ability to acquire immunity and insulate against liability for negligence by paying workers' compensation insurance premiums or benefits on behalf of an injured worker's direct employer.

¶ 40    The appellate court and the circuit court here erroneously declined to follow our holding in *Laffoon*. We, therefore, reverse the judgments of the lower courts and remand the cause to the circuit court for further proceedings.

¶ 41                                    III. CONCLUSION

¶ 42    We hold that the exclusive remedy provisions under sections 5(a) and 11 of the Act do not extend to a general contractor who is not the employee's immediate employer. We reverse the judgments of the appellate court and the circuit court and remand for further proceedings.

¶ 43    Judgments reversed.

¶ 44    Cause remanded.