**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 250067-U

Order filed December 22, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| ANGELO DIMAS and GEORGIA DIMAS, | ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiffs-Appellants, | ) | of the 18th Judicial Circuit, |
| | ) | Du Page County, Illinois, |
| v. | ) | |
| | ) | |
| WHEATON EYE CLINIC, LTD; 20-15 | ) | Circuit No. 18-L-628 |
| REALTY, LLC, 7447 ENTERPRISES, | ) | |
| LLC, f/k/a KNRKJR ENTERPRISES, LLC, | ) | |
| f/k/a ARIEL CAPITAL INVESTIMENTS, | ) | Honorable |
| LLC, and WESTSIDE MECHANICAL | ) | David E. Schwartz, |
| GROUP, INC., | ) | Judge, Presiding. |
| | ) | |
| Defendants-Appellees | ) | |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justice Hettel and Justice Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  Grant of summary judgment was appropriate where the plaintiff failed to plead facts sufficient to establish a cause of action against parent companies.

¶ 2    An injured employee brought suit against the parent companies of his employer.

Following depositions, the parent companies moved for summary judgment, which was granted

on the basis that, *inter alia*, the plaintiff failed to plead facts sufficient to establish a duty on the part of the defendants. The plaintiff appealed.

¶ 3                                    I. BACKGROUND

¶ 4        On February 5, 2017, the cooling system at the Wheaton Eye Clinic was not working properly. Responsibility for the failure fell to Frank Amendola, the building manager for the eye clinic. Amendola contacted a repair company with whom the eye clinic had a standing relationship, Excel Mechanical Services (Excel), to request repairs to their heating, ventilation and air conditioning (HVAC) system. On the morning of February 6, 2017, Thomas Worley, the president of Excel, dispatched Angelo Dimas, to complete the repairs. Dimas was familiar with the clinic, having been dispatched there many times previously. He knew, for example, that the building had three roofs, with one HVAC unit on the second roof and three more units on the third roof.

¶ 5        Dimas needed to access the third roof. It was a cold morning, and the ground appeared to be wet. Undeterred, Dimas removed a twenty-two-foot fiberglass ladder from his van, placed it against the side of the building, and ascended to the second roof. Once there, Dimas observed frost on the roof. The roof's surface was slippery beneath his feet. These conditions gave Dimas pause. He decided to call Worley to discuss the assignment, but Worley did not answer. Dimas left a voicemail, and then he called Amendola. Amendola was in a meeting, and he did not answer either. Dimas considered his options. After about fifteen minutes of waiting, and with no additional direction or help forthcoming, he decided to proceed.

¶ 6        The eye clinic kept ladders on site, and there was a smaller ladder—about eight or nine feet in length—laying on the roof. Dimas had used the ladder before to reach the third roof, and he decided to do so again that morning. He carried a backpack filled with supplies for

2

completing his HVAC work, and he hauled the backpack up the ladder with him. As Dimas neared the top of the ladder, he removed the backpack and placed it carefully on the third roof. He then ascended a little further and attempted to transfer himself onto the roof. He removed one foot from the ladder, took a step toward the roof, and the ladder suddenly slipped backward. Without warning, Dimas plummeted back down to the second roof, where he found himself on his back, staring up at the sky. Sensing he was injured, he called for emergency services.

¶ 7　　　　On May 30, 2018, Dimas sued his employer, Excel, and the Wheaton Eye Clinic. On February 1, 2019, Dimas amended his complaint to include 20-15 Realty, LLC, the company that owned the premises, 7447 Enterprises, LLC (7447 Enterprises), the parent company of Excel, and Westside Mechanical Group, Inc. (Westside Mechanical), the parent company of 7447 Enterprises. On September 15, 2020, Dimas filed his third (and final) amended complaint. Excel, Wheaton Eye Clinic, and 20-15 Realty, LLC were eventually dismissed as parties due to settlement. Only 7447 Enterprises and Westside Mechanical remained.

¶ 8　　　　Dimas's final complaint alleged, in relevant part, that 7447 Enterprises and Westside Mechanical each failed to direct Excel to provide "the proper number, types and lengths of ladders," and "provide [Dimas] ladders with a fall prevention system such as ladder hooks, ladder anchors or similar systems." The complaint contended that 7447 Enterprises and Westside Mechanical "had a duty to manage [Excel] to ensure that [Dimas], as an employee of [Excel], had the necessary equipment to perform his job functions."

¶ 9　　　　Dimas deposed corporate representatives from Excel, 7447 Enterprises, and Westside Mechanical. Excel was represented by Worley, who stated he was familiar with the eye clinic, its roof, and the location of its HVAC systems. Excel had safety policies in place, and its employees underwent regular safety training, which was supervised and provided by their union. Excel also

employed a safety director. In 2016 or 2017 Excel's employees underwent ladder training, and Worley believed Dimas was present for that training.

¶ 10    James Reiss testified as a corporate representative for both 7447 Enterprises and Westside Mechanical. 7447 Enterprises had no employees and essentially acted as a "flow through" entity between Westside Mechanical and Excel. 7447 Enterprises gave full operational authority over Excel to Worley and took no position on how Dimas's injuries occurred. Westside Mechanical acted as a "holding company" and did not produce any goods or services itself. It denied having any operational control over Excel, including sending Dimas to Wheaton Eye Clinic, providing Dimas any instructions about what tools or equipment to use, or supervising Dimas in any way.

¶ 11    Dimas requested written discovery from the defendants, then moved to compel written discovery when the defendants refused to comply with requests for certain documents. On January 13, 2022, the court ordered the defendants to provide any written safety policies or procedures and documentation pertaining to safety training but denied Dimas's motion to compel the defendants to produce documents pertaining to "shareholder and corporate information" and "tax return/accountant information." Dimas sought similar documents when he moved to depose the defendants' corporate representatives. However, the court struck those requests as well. On July 25, 2023, Dimas issued a records subpoena, but the court quashed it.

¶ 12    On March 15, 2024, the defendants filed separate motions seeking summary judgment. Following a hearing, the circuit court granted summary judgment on two grounds. First, the court found that the defendants were shielded by the exclusive remedy provision of the Workers' Compensation Act (820 ILCS 305/5(a) (West 2024)). Second, the court held that the relationship between the parties was "insufficient to establish any duty to this plaintiff." The court also

4

commented that there was "no factual basis to support any knowledge of any dangerous condition" on the part of the defendants and observed that there had been no testimony or evidence to suggest the defendants "did not act reasonably or that their conduct was a proximate cause of [the] plaintiff's fall." Dimas appealed the court's ruling.

¶ 13                                II. ANALYSIS

¶ 14        On appeal, Dimas claims the court erred when it granted summary judgment in favor of 7447 Enterprises and Westside Mechanical. He further claims the court abused its discretion when it prevented him from obtaining discovery that would have been relevant to his theory of liability.

¶ 15                             A. Summary Judgment

¶ 16        Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2024). Summary judgment is a "drastic means of disposing of litigation" and should only be granted when the right of the moving party is clear and free from doubt. *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 15. The plaintiff's failure to establish any element of the cause of action may result in summary judgment for the defendant. *Id*. We review an appeal from a ruling on a motion for summary judgment *de novo*. *Id*. As a reviewing court, we may affirm the decision of the circuit court on any grounds present in the record, regardless of whether the circuit court relied on those grounds and regardless of whether the circuit court's reasoning was correct. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192 (2007).

¶ 17        Although the circuit court granted summary judgment on two grounds, the defendants did not request summary judgment on the basis that they were shielded by the exclusive remedy

provision (section 5(a)) of the Workers' Compensation Act. On appeal, the defendants did not respond to Dimas's contention that the court erred when it granted summary judgment on that basis. Indeed, the court was incorrect to find that the defendants were shielded by section 5(a) of the Workers' Compensation Act. As our supreme court has stated, "[i]f a parent company and its subsidiary are operated as separate entities, only the entity that was the immediate employer of the injured worker is entitled to section 5(a) immunity." *Munoz v. Bulley & Andrews*, 2022 IL 127067, ¶ 29. Nonetheless, Dimas's failure to articulate a duty owed to him by the defendants was a separate and independent reason for granting summary judgment. Therefore, we turn now to the court's second stated basis for granting judgment to the defendants as a matter of law.

¶ 18       To bring a cause of action for negligence, plaintiffs are required to "show that the defendant owed and breached a duty of care, proximately causing the plaintiffs injury." *Forsythe v. Clark*, 244 Ill. 2d 274, 280 (2007). The existence of a duty is a question of law, whereas the determination of whether the duty was breached and whether the breach proximately caused injury are factual matters. *First National Bank v. City of Aurora*, 71 Ill. 2d 1, 12 (1978). There are four factors courts use to determine the existence of a duty: (1) the reasonable foreseeability of the injury, (2) the likelihood of injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden upon the defendant. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 18.

¶ 19       Although the circuit court commented on the lack of any evidence that the defendants' actions proximately caused Dimas's injuries, the threshold question we must first answer is whether the defendants owed Dimas a duty of care. See *Forsythe*, 244 Ill. 2d at 280. Dimas insists the defendants' duty arises from their role as managers of Excel and not from their position as Excel's parent company. He has taken pains, both in his pleadings and on appeal, to

6

make clear that his sole theory of recovery is that 7447 Enterprises and Westside Mechanical owed him a duty "based on their roles as [c]orporate [m]anagers—not as parent companies—of Excel." Dimas concedes that the "[t]he record is bare of any admissible evidence to support *** a parent/subsidiary claim." Accordingly, Dimas requests that we consider the four factors that shape the duty analysis and conclude that 7447 Enterprises and Westside Mechanical "had a duty to properly manage Excel *** and failed to do so."

¶ 20    The general rule, which is a well-established and long-standing principle of corporate law, is that a parent corporation is not liable for the acts of its subsidiaries. *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998). This principle is reflected in section 10-10(a) of the LLC Act, which holds that

> "[e]xcept as otherwise provided in subsections (a-5) and (d) of this Section, the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager is not personally liable for a debt, obligation or liability of the company solely by reason of being or acting as a member or manager."  810 ILCS 180/10-10(a) (West 2024).

¶ 21    Dimas aims to avoid the principle that parent companies owe no duty to third parties by claiming the defendants owed a separate duty as managers, a general duty to "manage" or "operate" Excel in such a way that no reasonably foreseeable harm would befall him. Based on that theory, Dimas's complaint alleges that the defendants failed to more fully involve themselves in Excel's affairs, and that by distancing themselves from Excel's operations they shirked their duties as managers. We find, however, that Dimas's theory of liability is flawed.

7

¶ 22        Dimas offers no evidence to contradict the fact that the defendants are parent companies. As such, they are each a separate legal entity from Excel, and they are not liable for the acts or omissions of Excel. "A corporation is a legal entity that exists separately and distinctly from its shareholders, officers, and directors, who generally are not liable for the corporation's debts." *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 500 (2005). The purpose of doing business as a corporation is to insulate stockholders from unlimited liability for corporate activity, and this protection inures even when the corporation is closely held or has a single shareholder. *Id.* The only way to circumvent the defendants' corporate protection is to "pierce the corporate veil." See 1 W. Fletcher, Cyclopedia of Corporations § 41, at 557 (1999) (the corporate veil may be pierced if there is an abuse of the corporate form).

¶ 23        Piercing the corporate veil is an equitable remedy, which "is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract." *Id.* Thus, under certain circumstances, parent companies can incur liability when they utilize their position to interfere in the management of a subsidiary. *Forsythe*, 224 Ill. 2d at 233-34. Still, "[p]iercing [the] corporate veil is a task which courts should undertake reluctantly." *Pederson v. Paragon Pool Enterprises*, 214 Ill. App. 3d 815, 819 (1991). Parent corporations can also be held liable for their own direct actions taken against third parties, and this, too, is recognized by the LLC Act. See 810 ILCS 180/10-10(a-5) (West 2024) ("Nothing in subsection (a) or subsection (b) limits the personal liability of a member or manager imposed under law other than this Act including, but not limited to, the law of agency, contracts, and torts, and *** court-imposed equitable remedies, such as piercing the limited liability company veil.").

¶ 24        However, no court has yet pierced the corporate veil for a parent company's failure to more vigorously direct or control the activities of a subsidiary, and for good reason. Doing so

8

would eliminate the purpose of the corporate form, which shields the owner's assets from those of the corporation precisely because of the legal separation between owners and corporations. See *Bestfoods*, 524 U.S. at 61. Thus, as our supreme court reaffirmed in *Forsythe*, the general rule is that parent corporations are not liable for the acts of their subsidiaries when third parties are injured. *Forsythe*, 244 Ill. 2d at 282. A narrow exception exists when parent companies use their ownership control to interfere in the internal management of the subsidiary, and thus directly participate in the complained-of wrongdoing. *Id*. at 283. But the parent company's "failure" to participate in the alleged wrongdoing cannot form the basis of a theory of liability.

¶ 25     The "managerial" functions Dimas contemplates, and which he alleged the defendants failed to perform, include directing Excel to provide "the proper number, types and lengths of ladders" and directing Excel to "provide [Dimas] ladders with a fall prevention system such as ladder hooks, ladder anchors or similar systems." However, Dimas offers no theory to justify why these activities should subject anyone other than Excel to liability. His complaint alleges the defendants "had a duty to manage [Excel] to ensure that [Dimas], as an employee of [Excel], had the necessary equipment to perform his job functions." Without allegations sufficient to justify piercing the corporate veil, Dimas's articulation of the defendants' duty is, at best, incomplete.

¶ 26     To pierce the corporate veil, Dimas was required to offer allegations sufficient to show that 7447 Enterprises and Westside Mechanical "mandated an overall business and budgetary strategy and carried that strategy out by [their] own specific direction or authorization, surpassing the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary." *Id*. at 290. Instead, Dimas alleged only managerial failures on the part of Excel, which he attributed without evidence to 7447 Enterprises and Westside Mechanical.

9

Because Dimas failed to articulate a valid theory of liability, the court properly granted summary judgment in favor of the defendants.

¶ 27                                            B. Discovery

¶ 28        Dimas next argues the trial court erred when it precluded him from obtaining relevant discovery. Specifically, Dimas takes issue with the court's decision to deny his motion to compel the defendants to produce tax and accounting information, the court's decision to strike the request for documents he attached to his depositions notices, and the court's decision to quash records subpoenas issued on July 25, 2023. The defendants respond that Dimas failed to request additional discovery pursuant to Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013) prior to proceeding to hearing on the motion for summary judgment.

¶ 29        The circuit court's discovery decisions are reviewed for an abuse of the court's discretion, and "the circuit court's discretionary powers regarding pretrial discovery are extremely broad." *Hayward v. C.H. Robinson Co.*, 2014 IL App (3d) 130530, ¶ 45. A circuit court abuses its discretion where its rulings are arbitrary, fanciful, or unreasonable or where no reasonable person would adopt the court's view. *Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill. App. 3d 504, 513 (2005). Rule 191(b) outlines the procedures to follow when a party believes that additional discovery is necessary to adequately respond to a motion for summary judgment. *Jiotis v. Burr Ridge Park District*, 2014 IL (2d) 121293, ¶ 28.

¶ 30        Rule 191(b) requires a party seeking additional discovery to provide an affidavit attesting that:

> "[m]aterial facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what

affiant believes they would testify to if sworn, with reasons for his belief \*\*\*." Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013).

"It is well established when a plaintiff does not submit a Rule 191(b) affidavit, he cannot complain on appeal of an inability to conduct discovery before summary judgment was ordered." *Hayward*, 2014 IL App (3d) 130530, ¶ 46.

¶ 31      Dimas never submitted a Rule 191(b) affidavit, nor did he make any other efforts to comply with the rule's requirements. It is within our power to deny relief on that ground alone. Reviewing Dimas's claim, however, we find that the court did not abuse its discretion. As Dimas correctly noted in his brief, "[a] plaintiff's complaint frames the case's issues." *McGoey v. Brace*, 395 Ill. App. 3d 847, 849 (2009). The court's role is to use its discretion to balance "the needs of truth and excessive burden to litigants." *Welton v. Ambrose*, 351 Ill. App. 3d 627, 633 (2004). Here, the court permitted Dimas to depose corporate representatives from Excel, 7447 Enterprises, and Westside Mechanical. The court limited Dimas's written discovery requests. However, those requests were made to pursue a legally flawed theory of liability. Dimas's claim failed, not for insufficient discovery, but for his inability to state a claim in tort law. It was therefore not an abuse of the court's discretion to limit Dimas's efforts to gather additional evidence.

¶ 32      Accordingly, we affirm the judgment of the circuit court.

¶ 33      Affirmed.

11